550 So.2d 252 (1989)
Susan LAWLESS, Individually and as Natural Tutrix of the Estate of her Minor Children, Robert Lawless and Ryan Lawless
v.
The NEW ORLEANS POLICE DEPARTMENT and the City of New Orleans.
No. 89-CA-0211.
Court of Appeal of Louisiana, Fourth Circuit.
September 14, 1989.
Writ Denied November 17, 1989.
*253 Michael D. Meyer, New Orleans, for plaintiff/appellant.
Patricia A. Johnson, Student Practitioner, Philip A. Costa, Deputy City Atty., William A. Aaron, Chief Deputy City Atty., Okla Jones, II, City Atty., New Orleans, for defendants/appellees.
Before CIACCIO, WARD and ARMSTRONG, JJ.
ARMSTRONG, Judge.
Plaintiff, Susan Lawless, individually and on behalf of her minor children, appeals the trial court judgment dismissing her claim for workmen's compensation death benefits.
On August 25, 1983, Albert Lawless, Director of the Police Academy, sustained fatal injuries as a result of a single vehicular accident. The facts adduced at trial reveal that the decedent was driving a police vehicle at approximately 59 m.p.h. east on Old Gentilly Highway. An accident reconstruction expert testified that the vehicle left the highway because of a loss of control by the driver. On the day of the accident, Lawless played baseball on the New Orleans Police Department Team. Afterward some of the team members went to a lounge on Morrison and Read Road for drinks and Lawless had several beers. Lawless left the lounge at approximately 9:00 p.m. The accident occurred at approximately 9:36 p.m.
Susan Lawless filed suit against the New Orleans Police Department (NOPD) and the City of New Orleans on behalf of her minor children and herself for workmen's compensation death benefits. The trial court dismissed her claim. On appeal, Ms. Lawless argues that the trial court erred in finding that Albert Lawless was not acting *254 in the course and scope of his employment at the time of his accident and that he was intoxicated. We affirm the trial court's judgment.

I.
The trial court found that Lawless was not acting in the course and scope of his employment at the time of the accident. It determined that because Lawless was driving in the opposite direction from both his residence and the place of his employment he must have been on a personal mission. The law is clear that there is no recovery of workmen's compensation death benefits when the decedent was not engaged in his employer's business but merely pursuing his own business or pleasure when the accident occurs. Bush v. Houston Fire and Casualty Ins. Co., 152 So.2d 377 (La.App. 1st Cir.1963).
At trial, testimony offered by police officers who worked with Lawless suggested that Lawless was on a mission to retrieve a paper cutter that was missing from the NOPD. There is no way to confirm these speculations.
Plaintiff insists that Johnson v. Dufrene, 433 So.2d 1109 (La.App. 4th Cir. 1983), writ denied, 441 So.2d 765 (La.1983) is applicable to determine whether Lawless was acting in the course and scope of his employment as a police officer for the city. We disagree. The two cases are clearly distinguishable. Officer Dufrene was driving an unmarked police car from his brother-in-law's birthday party and was on his way to bring his mother-in-law home when he forcefully collided with a stopped car. The court conceded that this was a purely personal mission but concluded that nevertheless Dufrene was acting in the course and scope of his employment. Dufrene had been given special permission to use his unmarked police car at all times despite a NOPD policy that a policeman would be allowed the regular personal use of a vehicle only when his duties required it for a specific purpose. Dufrene's expertise in repairing NOPD record machines was in critical demand at all times. Thus his vehicle had been equipped with a police radio so that even while driving on a personal mission he would be available to return to headquarters to repair the record machines at a moment's notice. The court concluded that Dufrene conferred a "benefit" to his employer every time he rode in his own police car. By virtue of the car's police radio, he was accessible and his accessibility, even while on personal missions, was itself a part of Dufrene's duty.
There is nothing to suggest accessibility was the paramount factor in assigning Lawless a police vehicle. It was not equipped with a car radio. The car appears to be a fringe benefit allowed the Commander of the Police Academy.

II.
Plaintiffs argue that the blood alcohol test should not have been admitted into evidence because there was a break in the chain of custody of the evidence. Furthermore, they insist that Lawless could not have been intoxicated at the time of the accident because he only had a few beers at the lounge.
Bufkin v. Mid-American Ind. Co., 528 So.2d 589 (La.App. 2d Cir.1988) confirms that the blood alcohol test was properly admitted. Citing Schwab v. Galuszka, 463 So.2d 737 (La.App. 4th 1985), writ denied, 464 So.2d 1386 (La.1985), cert. denied, 474 U.S. 803, 106 S.Ct. 37, 88 L.Ed.2d 30 (1985), the court explained that the purpose of the chain of custody rule is to assure the integrity of the evidence, i.e. to prevent the evidence from being tampered with or from being lost. Accordingly, before test results, including blood alcohol test results, can be admitted in a civil or a criminal proceeding, the party seeking to introduce the results must lay a proper foundation by "connecting the specimen with its source, showing that it was properly labeled and preserved, properly transported for analysis, and properly taken by an authorized person, properly tested." Swanson v. Estate of Augusta, 403 So.2d 118, 124 (La. App. 4th Cir.1981), writ denied, 407 So.2d 732 (La.1981).
Dr. Paul McGary, a pathologist for the coroner's office, testified he personally *255 drew the blood sample from the decedent. This sample was given to the toxicologist, Angela Comstock, who chemically tested the sample. He also testified that precautions were taken regarding the chain of custody of the blood sample after sequestration and until delivery to the toxicologist. Angela Comstock's testimony supports the conclusion that there was no break in the chain of custody. She testified that although the test was conducted five years prior to the trial she had no reason to assume that delivery of the blood sample was by any means other than the routine, which was physical delivery to her or delivery into a locked refrigerator in her laboratory. By her testimony, the blood sample was properly labelled, preserved, and tested to insure the most accurate results.
Conley v. Liberty Mutual Ins. Co., 421 So.2d 254 (La. 4th Cir.1982), writ denied, 427 So.2d 1209 (La.1983) applied the reasoning that the defendant satisfied the civil burden of proof, in that it is more probable than not that the plaintiff was intoxicated at the time of the accident and that his intoxication was a substantial cause of the accident. Conley stands for the proposition that a blood-alcohol level within the vicinity of 0.25 per cent is intoxicated. Evidence was presented which established that the decedent's blood alcohol content was 0.21 per cent. Dr. McGary's expert opinion was that the abilities of a person with this level of blood alcohol content would be seriously impaired, especially the ability to operate an automobile.
It was not manifest error for the trial court to find that Lawless was not acting in the course and scope of his employment at the time of the accident and that he was intoxicated. Arceneaux v. Dominque, 365 So.2d 1330 (La.1979); Canter v. Koehring Co., 283 So.2d 716 (La.1973). For the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.