719 So.2d 494 (1998)
Carl A. RARESHIDE
v.
MOBIL OIL CORPORATION.
No. 97-CA-1376.
Court of Appeal of Louisiana, Fourth Circuit.
April 22, 1998.
Rehearing Denied May 15, 1998.
*497 Joseph F. Bishop, Jr., Garcia & Bishop, Metairie, for Plaintiff/Appellee.
Renee Summer Melchiode, Taylor, Wellons & Politz, L.L.C., New Orleans, for Defendant/Appellant.
Before BARRY, PLOTKIN and JONES, JJ.
JONES, Judge.
Appellant, Mobil Oil Corporation (Mobil), appeals the judgment of the Office of Worker's Compensation whereby the Worker's Compensation Judge (WCJ) found the claimant had contracted asbestosis during the course and scope of his employment at the Mobil refinery. The WCJ further found that Mobil's insurer, National Union Fire and Insurance Company (National Union), was arbitrary and capricious in payment of the claimant's medical expenses. As a result, the worker's compensation judge assessed a penalty of $2,000 or twelve percent (12%) of the unpaid benefits, whichever is greater, and attorney's fees of $5,000 against Mobil. Mobil was also ordered to provide vocational rehabilitation, retraining, and identification of jobs suitable for the claimant, and all costs associated to this matter were to be paid by Mobil.
Mobil filed a suspensive appeal and Mr. Rareshide answered Mobil's appeal and requested that the judgment be modified to include compensation for his heart attack, to provide an award for all costs in both the trial and appellate courts, and attorney fees for representation through these proceedings.

FACTS
The claimant, Mr. Carl Rareshide, is a fifty-two-year (52) old male who was employed by Tenneco Refinery in Chalmette in 1965. In 1988, Mobil purchased the refinery, and Mr. Rareshide continued to work there until June 22, 1995. Both parties stipulated that Mr. Rareshide was an employee of Mobil at all times pertinent herein. It was also uncontroverted that Mr. Rareshide was consistently exposed to asbestos above background[1] level dosages and other carcinogenic chemicals throughout his employment. Mr. Rareshide admitted at trial that he was also an active cigarette smoker from the age of fourteen, and quit smoking approximately a year before the trial.
While employed at Mobil, Mr. Rareshide held a variety of positions which included: mechanical assistance, machinist, pipe fitter, insulator, warehouseman, second class pipe fitter, and mobile crane operator. In each of the positions, Mr. Rareshide was constantly exposed to and required to handle asbestos and other carcinogenic substances.
On July 17, 1995, Mr. Rareshide was admitted to East Jefferson Hospital to have a left thoracotomy performed to remove from his lungs a dense fibrous rind. His entire left lung required decortication and a near total parietal pleurectomy was performed to remove the diseased pleura. This procedure was performed by Dr. Harry A. Roach, a cardiac thoracic vascular surgeon at East Jefferson Hospital. Dr. Roach's diagnosis of Mr. Rareshide's condition was the following: (1) left pleural effusion, (2) trapped left lung, (3) no evidence of pulmonary parenchymal lesion, and (4) fibrosis pleuritis with hemorrhage.
In the report sent to Mr. Rareshide, Dr. Roach believed that the diseased area had developed due to Mr. Rareshide's constant exposure to asbestos. Attached to this report was the pathology report and the operative report. Dr. James Elston, a pathologist, examined tissue samples from Mr. Rareshide's lungs and noted, "mild inflammation with active fibroplasia." Mr. Rareshide and his wife delivered these reports to Mobil's nurse. Prior to the operation, Mr. Rareshide was not aware that his condition was the result of his exposure to asbestos while employed *498 at Mobil. Therefore, Mobil was not put on notice about Mr. Rareshide's medical condition until Dr. Roach's report was delivered.
A few weeks later, claimant suffered a heart attack while constructing his fishing camp. It was later determined that Mr. Rareshide suffered from a heart disease which is caused by a blockage of the arteries. Mobil's compensation carrier, National Union, through its adjuster, Ms. Karen Denning-Rutledge, investigated this claim and made all decisions concerning the payment of medical expenses and the compensability of the injuries sustained by Mr. Rareshide under the Worker's Compensation Act.
Following the July operation, Dr. Roach referred Mr. Rareshide to Dr. Bernard Brach, a pulmonologist. After receiving Mr. Rareshide's medical history and performing a CAT scan, Dr. Brach prepared a report dated October 5, 1995, which stated that Mr. Rareshide suffered from an asbestos related disease, i.e., pleural and interstitial disease. Furthermore, Dr. Brach concluded that Mr. Rareshide should be removed from exposure and his employment should be restricted to an environment in which no further lung damage or risk is present. This report was sent to Ms. Denning-Rutledge shortly after October 5, 1995, but no inquiries were made to Dr. Brach concerning his medical opinion of Mr. Rareshide. Ms. Denning-Rutledge delayed payment of Mr. Rareshide's medical expenses until her investigation was completed.
In November, 1995, Dr. Robert Jones, a physician for Mobil, met with Mr. Rareshide concerning his recent lung surgery. He reported that Mr. Rareshide had an asbestos induced pleural disease, but denied that his symptoms were the result of asbestosis. Dr. Jones did believe that the claimant's condition was occupational, but declared that Mr. Rareshide could return to work without any restrictions on his employment.
In view of Dr. Jones' report, Ms. Denning-Rutledge found that Mr. Rareshide was no longer entitled to any benefits. Hence, she decided to discontinue any further payments to Mr. Rareshide as of December 4, 1995. Prior to receiving this report, Ms. Denning-Rutledge did not make any attempt to obtain an itemized bill from East Jefferson Hospital regarding Mr. Rareshide's lung surgery, but relied on claimant's counsel to forward her copies of his medical expenses. Mr. Rareshide's account was submitted to a collection agency because no attempt was made to satisfy this debt, and his wages were subsequently garnished.
Rather than continue paying worker's compensation benefits to this claimant, Mobil offered Mr. Rareshide several possible positions at the refinery that were allegedly suitable for him. Mr. Rareshide refused to return to work claiming that working in the refinery would further depreciate his health and expose him to a greater risk of contracting cancer.
Lastly, Mr. Rareshide met with Dr. Bennett deBoisblanc, a state appointed medical examiner, who, after meeting with Mr. Rareshide, diagnosed Mr. Rareshide with (1) mild Chronic Obstructive Pulmonary Disease (COPD) which is related to cigarette smoking and does not limit his physical activities; (2) asbestos-related pleural disease which causes no functional impairment; (3) ischemic heart disease with moderately severe exercise limitation, but it is not Related to asbestos exposure and is not aggravated by his mild lung disease; and (4) mild asbestosis which causes no physical impairment at this time.
Following the diagnosis, Dr. deBoisblanc reasoned that because a person's exposure to background air is inevitable, Mr. Rareshide would be safe in returning to the refinery so long as he is not exposed to any further asbestos or other carcinogens above background.
Once Dr. deBoisblanc placed this restriction on Mr. Rareshide's ability to return to work, Ms. Beverly Mann, the vocational consultant for Mobil, made a site visit to the refinery to inquire about possible positions for the claimant. A position in the warehouse and a position in the laboratory were identified as being suitable for him. Ms. Mann spoke with potential supervisors regarding these positions and asked about specific work duties for their employees. She noted her findings and submitted them to Dr. *499 deBoisblanc who approved both jobs, without limitation, in addition to approving claimant's former job as a crane operator.
In addition to having the two positions approved by Dr. deBoisblanc, Ms. Dana Kelley, Mobil's industrial hygienist, hired an independent air monitoring company named GEST. GEST took air samples from the cabs of the cranes, where Mr. Rareshide previously worked, to insure that the air at the refinery was not above background on a daily basis. Ms. Kelley testified that the results from the tests proved that the air was not above background on a regular basis, and that Mr. Rareshide would not be in danger of further inhalation of carcinogenic dust if he was to return to work at the refinery.
Despite the reports from Drs. Jones and deBoisblanc, the air samples taken by GEST, and the testimony of Ms. Mann and Ms. Kelley, the worker's compensation judge found that Mr. Rareshide (1) had contracted asbestosis from his employment at Mobil; (2) was entitled to worker's compensation benefits from December 5, 1995, to the present; and (3) that additional rehabilitation, training, and identification of jobs were needed before he could return to work. The WCJ also concluded that Mobil was arbitrary and capricious in its refusal to pay medical expenses and worker's compensation disability benefits in a timely manner, after being notified.

DISCUSSION
Factual findings in worker's compensation cases are subject to the manifest error or clearly wrong standard of review. Seal v. Gaylord Container Corp., 97-0688 (La.12/2/97), 704 So.2d 1161, 1164; Banks v. Industrial Roofing & Sheet Metal Works, 96-2840 (La.7/1/97), 696 So.2d 551, 556. Under the manifest error/clearly wrong standard of review, the appellate court need only determine whether the factfinder's conclusion was a reasonable one. Seal, 704 So.2d at 1164; Banks, 696 So.2d at 556; Stobart v. State, 617 So.2d 880, 882 (La.1993). Where two permissible views of the evidence exists, a factfinder's choice between the two views can never be manifestly erroneous or clearly wrong. Seal, 704 So.2d at 1164; Banks, 696 So.2d at 556; Stobart, 617 So.2d at 882. If the factfinder's findings are reasonable, the court may not reverse, even if it would have weighed the evidence differently. Seal, 704 So.2d at 1164; Banks, 696 So.2d at 556. However, when the court of appeal finds a manifest error of material fact was made in the lower court, it is required, whenever possible, to review the facts de novo from the entire record and render a judgment on the merits. Ferrell v. Fireman's Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742, 745. see La. Const. art. V, § 10(B).

1. Occupational Disease and Subsequent Disability
In the instant case, Mobil concedes that Mr. Rareshide has asbestosis, and that he was continually exposed to asbestos for over thirty (30) years while employed at the refinery. As a result, Mr. Rareshide demonstrated to the WCJ, by a reasonable probability, that this disease was work related. See Coats v. American Tel. & Tel. Co., 95-2670 (La.10/25/96), 681 So.2d 1243, 1247. Therefore, in order to be entitled to worker's compensation benefits, Mr. Rareshide has to show that this occupational disease has rendered him disabled. LSA-R.S. 23:1031.1(A).
In other words, after the employee has established the existence of an occupational disease, then he must further establish that he meets the criteria for one or more of the statutory disabilities, that is (1) temporary total disability, (2) permanent total disability, (3) supplemental earning benefits, or (4) permanent partial disability.
Seal, 704 So.2d at 1164, see also LSA-R.S. 23:1221 (West 1985 & Supp.1997) (Emphasis added). Three physicians opined that Mr. Rareshide would be placed at a greater risk of aggravating his condition if he returned to work at the refinery and was exposed to the same or greater amounts of carcinogenic dust. In fact, the physician who examined Mr. Rareshide after his thoracotomy at East Jefferson Hospital, testified, via. deposition, that he admonished Mr. Rareshide to avoid any and all second-hand smoke, and to get in the most clean environment that the refinery *500 could provide because he is under a great risk for developing mesothelioma.
Furthermore, Dr. Robert Jones, Mobil's expert, testified that if Mr. Rareshide has asbestosis, a fact later conceded by Mobil, then Mr. Rareshide would be unfit for occupational exposures as they are defined under OSHA regulations. Additionally, Mr. Rareshide testified that he has shortness of breath when he performs the simplest of tasks. He further stated that, though the warehouse and laboratory positions were identified as being suitable to him, there was still a possibility of inhaling carcinogenic dust. The disability issue "presents a legal, not purely a medical question which must be determined after considering all of the medical and lay testimony in the record." Jones v. El Mesero Restaurant, 97-636 (La.App. 3 Cir. 10/29/97), 702 So.2d 1133, 1136.
Although we accord deference to the factfinder, we are cognizant of our constitutional duty to review facts, not merely to decide if we, as a reviewing court, would have found the facts differently, but to determine whether the trial court's verdict was manifestly erroneous or clearly wrong based on the evidence, or clearly without evidentiary support.
Ambrose v. New Orleans Police Dept. Ambulance Service, 93-3099 (La.7/5/94), 639 So.2d 216, 221; Riley v. Reliance Insur. Co., 97-0445 (La.App. 4 Cir. 11/19/97), 703 So.2d 158, 162.
In view of all of the testimony and reports from the physicians who have examined this claimant, there is nothing in the record to say that the WCJ erred in concluding that Mr. Rareshide was disabled because of the contraction of asbestosis. Moreover, counsel for Mobil and its worker's compensation carrier stipulated that Mr. Rareshide has contracted asbestosis from his employment at Mobil at the commencement of oral arguments for this appeal.

2. Temporary Total Disability Benefits
Mobil argues that the WCJ was manifestly erroneous in awarding Mr. Rareshide temporary total disability (TTD) benefits. Mobil argues that TTD benefits "shall be awarded only if the employee proves by clear and convincing evidence that he is physically unable to engage in any employment." LSA-R.S. 23:1221(1)(c). Mobil contends that they offered Mr. Rareshide positions suitable for his present condition and that each position paid the same salary he was making as a crane operator. Mobil further contends that because Mr. Rareshide refused to apply for these positions, he forfeited his right to claim TTD benefits. Mobil goes on to say that neither Drs. Brach, Jones, nor deBoisblanc placed any restrictions on Mr. Rareshide's returning to work other than to say that he should not be exposed to any asbestos or carcinogenic substances in the refinery. Based upon the air samples taken and the results from these samples, together with testimony from Ms. Mann, a vocational rehabilitationist, Mr. Rareshide's apprehension about returning to the refinery is without merit. In Mobil's view, the claimant made the decision not to apply for the positions because of possible exposure. Therefore, Mobil should not be penalized for his reluctance to cooperate.
However, Mobil fails to recognize in asserting this assignment of error is that they stipulated in open court that if Mr. Rareshide prevailed, he would be entitled to the maximum TTD rate based his average work week. Given this stipulation, the WCJ did not error in awarding Mr. Rareshide TTD benefits. However, the WCJ was clearly wrong in awarding Mr. Rareshide TTD benefits from December, 1994, to the present.
An award of benefits based on temporary total disability shall cease when the physical condition of the employee has resolved itself to the point that a reasonable reliable determination of the extent of disability of the employee may be made, and the employee's physical condition has improved to the point that continued, regular treatment by a physician is not required, or six months after the injury, whichever occurs first.

LSA-R.S. 23:1221(1)(d) (emphasis added).
In the instant case, the six months elapsed first. As a result, Mobil was only required to pay TTD benefits for six months. Since Mobil had already paid TTD benefits for the period June 22, 1995, to December 4, 1995, *501 the WCJ was clearly wrong to order payments beyond December 4, 1995. Rather then awarding Mr. Rareshide TTD benefits from December 5, 1995, to the present, the WCJ should have awarded Mr. Rareshide benefits equaling six months from the date of injury, i.e., June 22, 1995. Therefore, the WCJ should have ordered Mobil to pay TTD benefits from December 5 through December 22, 1995, allowing Mr. Rareshide to receive the six months of benefits. For the period after December 22, 1995, Mr. Rareshide would only be entitled to supplemental earnings benefits (SEBs).

3. Supplemental Earning Benefits
"The purpose of SEBs is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident." Banks, 696 So.2d at 556, citing Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52, 55 (La.1993). If an employee sustains a work related injury, resulting in his inability to earn ninety percent (90%) or more of his average pre-injury wage, he is entitled to receive SEBs. LSA-R.S. 23:1221(3)(c)(i). Under the facts and circumstances of the individual case, the employee bears the burden of proving, by a preponderance of the evidence, that, because of his injury, he is unable to earn ninety percent (90%) or more of his pre-injury income. Seal, 704 So.2d at 1163; Banks, 696 So.2d at 556; Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733, 737-38. In performing this analysis, the court is mindful that worker's compensation law is to be construed in favor of coverage. Seal, 704 So.2d at 1163; Banks, 96-2840, 696 So.2d at 556; Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1007 (La.1989).
If the employee satisfies this burden, the burden then shifts to the employer. To rebut the employee's claim for SEBs, or to establish the employee's earning capacity, the employer must prove, by a preponderance of the evidence, that the employee possesses the physical capabilities to perform a job. The employer, or any other employer, must also offer or tender such a job to the employee, or establish that such a job was available to the employee in his or the employer's community or reasonable geographic region. LSA-R.S. 23:1221(3)(c)(i); Seal, 97-0688, 704 So.2d at 1164; Banks, 96-2840, 696 So.2d at 556; Daigle, 545 So.2d at 1009. Actual job placement is not required. Seal, 97-0688, 704 So.2d at 1164; Banks, 96-2840, 696 So.2d at 556. The amount of SEBs equals sixty-six and two-third percent (66.67%) of the difference between the average monthly wages at the time of injury and average monthly wages the employee earns or is able to earn in any month thereafter. LSA-R.S. 23:1221(3)(a).
In the instant case, Mobil contends that Mr. Rareshide is not entitled to SEBs because they offered him jobs within his physical capability. Mobil also contends that the WCJ was clearly wrong in not addressing this issue. The WCJ did not address the issue of SEBs because both parties stipulated that if Mr. Rareshide prevailed he would be entitled to TTD benefits. However, because TTD benefits cannot exceed six months from the date of injury, the WCJ was clearly wrong in not deciding whether Mr. Rareshide was entitled to SEBs.
The medical and lay testimony presented at the hearing established that Mr. Rareshide suffered from an occupational disease which prevented him from returning to his job as a crane operator where he earned approximately $4,000 per month. At the time of the hearing, Mr. Rareshide was fifty-two years (52) old and had been employed at the refinery since 1965. This testimony established that the claimant spent his entire work life at his job at the refinery and has no other discernible skills to earn a living. Mr. Rareshide testified that he left his employment in 1995, because of the conditions of his lungs caused by asbestosis. The medical testimony corroborated claimant's testimony. Clearly, Mr. Rareshide cannot earn his pre-injury wages because he cannot return to his job and because he has no other skills other than that as a refinery worker.
Considering the tenet of worker's compensation law, requiring liberal construction in favor of coverage, Mr. Rareshide's age, limited education, and specialized work history allow for the conclusion that Mr. Rareshide would be unable to earn anything more than minimum wage, a far cry from ninety percent *502 (90%) of his $4,000 per month pre-injury wage. See Seal, 97-0688, 704 So.2d at 1165. Since Mr. Rareshide satisfied his burden of proof, we now consider whether Mobil carried its burden of proving that there were jobs available to Mr. Rareshide within his work restriction and geographic region that would allow him to earn ninety percent (90%) of his pre-injury wages.
In Banks v. Industrial Roofing & Sheet Metal Works, 96-2840 (La.7/1/97), 696 So.2d 551, 557, the Louisiana Supreme Court set forth a minimum standard that an employer must meet in order to defeat an employee's claim for SEBs by proving job availability. To prove job availability, an employer must establish, by competent evidence, the following:
(1) the existence of a suitable job within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region;
(2) the amount of wages that an employee with claimant's experience and training can be expected to earn in that job; and
(3) an actual position available for that particular job at the time that the claimant received notification of the job's existence.
Id. (emphasis added). Mobil must satisfy all three of these requirements to carry its burden of proof. Cognizant of the jurisprudential tenet requiring liberal construction favoring coverage, we find that Mobil failed to present sufficient evidence to carry its burden.

a) Existence of a suitable job
Since there was some confusion at trial and in the briefs submitted to this Court, it must be clarified exactly what Mr. Rareshide's physical limitations are. At trial, and in the briefs, it was suggested that Mr. Rareshide was told to avoid heavy lifting, climbing, and spending long hours on his feet. However, all of these restrictions were a result of claimant's subsequent heart attack; therefore, since the heart attack is not a compensable injury, see discussion infra, the restrictions resulting from the heart attack cannot apply against Mobil's attempt to make jobs available. As a result, the only restriction placed upon Mr. Rareshide was that he avoid further exposure to carcinogenic substances. Drs. Brach, Jones, and deBoisblanc all stated that Mr. Rareshide should not be exposed to any asbestos or other carcinogenic substances. Despite these work restrictions, Mobil contends that the positions offered to Mr. Rareshide were suitable for his present physical condition. Mobil offered Mr. Rareshide his original position, as well as nine additional jobs; however, all of these positions would have exposed Mr. Rareshide to asbestos, thus they do not satisfy the first Banks requirement.
At trial, Ms. Kelley, Mobil's Environmental Health and Safety adviser, testified that not all of the refinery equipment and machinery was asbestos free. She also testified that while Mobil has eliminated some of the asbestos over the years, Mobil never updated its surveys and incident reports concerning the presence of asbestos in the refinery. Mr. Eric LeBrocq, an industrial hygienist for the Claimant, testified that the asbestos that is currently in the refinery can be reduced to a powder or ground up by normal hand pressure and be transported to any area of the refinery by natural wind or different machinery on the plant like fin fans. He went on to testify that a majority of accidents involving asbestos result from unanticipated, unplanned releases due to equipment failure and people not following procedure. Mr. LeBrocq's testimony was substantiated when Ms. Kelley stated that the last six accidents which took place at the refinery since August, 1995, were the result of "unsafe actions by irresponsible people."
Ms. Kelley, in response to the possibility of further exposure, suggested that Mr. Rareshide could wear a respirator while on the refinery premises to protect him from further exposure. With such protective equipment, Mobil argues, the jobs would satisfy claimant's work restrictions. However, the Worker's Compensation Act does not require claimant to take extraordinary means to avoid unanticipated exposure. Furthermore, OSHA regulations do not permit use of respirators as a substitute for protection *503 against asbestos, in place of accepted engineering control measures by employees performing routine work.
Since none of the positions offered by Mobil to Mr. Rareshide could satisfy the work restrictions placed upon the claimant, Mobil failed to carry its burden of proving that any of the positions offered were "suitable." If the job offered cannot satisfy the work restrictions, it cannot be within his physical capabilities, thus, it is not suitable. See e.g., Seal, 97-0688, 704 So.2d at 1165 ("The most compelling shortfall in [the employer's] evidence, however, is that no one at the mill notified Seal or his counsel that there were any jobs available within Seal's work restrictionthat is, work that did not involve exposure to chemical fumes.").

b) Wages earned and the job's existence
Mobil can satisfactorily demonstrate that the wages of jobs offered to Mr. Rareshide were ninety percent (90%) or greater of his pre-injury wages. After all, Mobil clearly stated that no matter which job Mr. Rareshide chose, all would pay him a salary similar to his pre-injury wages. Therefore, Mobil carried its burden of proving the second Banks element.
The third Banks element is that Mobil must show that an actual position was available for the particular job at the time that the claimant received notification of the job's existence. In the instant case, Mobil properly notified Mr. Rareshide of jobs available to him. However, Mr. Rareshide argues the question of availability, claiming that since these jobs required a bidding process, they were not truly available to him. However, giving the super-seniority that Mr. Rareshide possessed by working at the refinery for over thirty years, along with the fact that bids go to the most senior bidder, Mobil has satisfied this element of proving job availability.
In light of the Supreme Court's decision in Seal and Banks, the record herein supports the conclusion that Mr. Rareshide's age, minimal education and physical limitations would severely jeopardize his ability to reenter the employment market and occupy those jobs identified by Mobil as being suitable for him. Claimant testified that he was unable to perform the work that he had done before and was extremely reluctant to disregard his physician's advise to not further expose himself to harmful chemicals, and to avoid any manual labor that may further aggravate his current condition. We find Mr. Rareshide's apprehension in this matter to be reasonable. Furthermore, this Court also finds that the WCJ was within its discretion to discredit the testimony of Mobil's vocational consultant, Ms. Mann, who stated that Mr. Rareshide could perform the work in the jobs identified by Mobil. Mr. Rareshide's mild case of asbestosis was not properly considered by Ms. Mann when she isolated these jobs for the claimant, and to force him to occupy one of these positions without substantial proof that he would not be violating his physician's advise would have been manifest error on the part of the WCJ.
Nonetheless, because Mobil was unable to carry its burden by proving that a suitable[2] job existed, Mobil has not met all of the Banks requirements necessary to prove that Mr. Rareshide was not entitled to SEBs. Thus, under LSA-R.S. 23:1221(3)(c), Mr. Rareshide is entitled to SEBs until suitable jobs or additional training is made available to the claimant.

4. Admission of Surveillance Videos, Incident Reports, and Surveys

a) Surveillance videos
Mobil argues that the WCJ's refusal to admit the surveillance videos into evidence was manifest error. The videos, which were proffered by Mobil, allegedly show Mr. Rareshide performing some tasks at the fishing camp he owns with two other individuals. He is seen painting, applying sealant, and sanding his fishing camp without using any protective respiratory equipment. These videos, according to Mobil, damages the *504 claimant's credibility by showing that Mr. Rareshide is physically capable of performing in the suggested positions at the refinery; hence, these videos should be admitted for that purpose only.
On the other hand, Mr. Rareshide argues that a proper foundation was never laid for the admittance of these tapes, and the WCJ's agreed. Mobil never established how the tapes were taken and did not have a witness to authenticate them. If they are to be viewed, Mr. Rareshide argues, they should be viewed in their entirety to show not only the work performed at the camp, but also to show the amount of time the claimant had to rest from each task he performed.
The Louisiana Code of Evidence art. 607 requires that extrinsic evidence such as these video tapes can be admitted to attack credibility under certain circumstances. However, the rules of evidence are more relaxed in a worker's compensation hearing. LSA-R.S. 23:1317 states in pertinent part:
The [WCJ] shall not be bound by technical rules of evidence or procedure other than as herein provided, but all findings of fact must be based upon competent evidence and all compensation payments provided for in this Chapter shall mean and be defined to be for only such injuries as are proven by competent evidence ...
(Emphasis added). Though the rules are relaxed, the WCJ has the discretion to admit hearsay evidence into the record of a worker's compensation proceeding. See Chaisson v. Cajun Bag & Supply Co., 97-1225 (La.3/4/98), 708 So.2d 375.
The record indicates Mobil attempted to introduce these videos without establishing the proper foundation before their submission. The purpose of laying a proper foundation is to assure the integrity of the evidence, and to prevent the evidence from being tampered with or from being lost. See Lawless v. New Orleans Police Dept., 550 So.2d 252, 254 (La.App. 4 Cir.1989). Without a proper foundation, we cannot say that the WCJ was manifestly erroneous or clearly wrong in refusing to admit the videotapes into evidence. Furthermore, we find that the claimant's case would have been deeply prejudiced by the admission of these unauthenticated videotapes, and since the videotapes only portrayed certain intervals of the claimant's activities without reflecting whether the claimant is suffering pain during those activities, this Court cannot say that the WCJ was clearly wrong because the videotapes do not prove that Mr. Rareshide can return to work involving manual labor. See Arriaga v. Reliance Insurance Co. of Illinois, 564 So.2d 832, 836 (La.App. 3 Cir.1990).

b) Incident reports and surveys
Mobil further argues that the WCJ committed manifest error when she admitted prior accident reports and asbestos surveys into the record. Mobil argues that the asbestos surveys provided absolutely no probative value to the case, they were unreliable, irrelevant, highly prejudicial, and should not have been admitted into evidence.
Mr. Rareshide argues that both Mr. LeBrocq and Ms. Kelley testified of the occurrence of accidents at the refinery involving asbestos and the incident reports complained of should be admitted to show that unanticipated exposure events, beyond the control of Mobil, occurred despite Mobil's good intentions. These reports are relevant when determining not only if the refinery is a safe environment to work, but whether it can be safe for someone who has had prior exposure to asbestos.
The asbestos surveys and accident reports were instrumental in rebutting Ms. Kelley's testimony that Mr. Rareshide would be safe in returning to work at the refinery. They were also used by the claimant's expert as justification for his opinion not to authorize Mr. Rareshide to return to Mobil. Absent any substantial prejudice, the surveys and reports were properly admitted into the record by the WCJ. LSA-C.E. 607(D)(2).

5. Crediting/Offsetting Short-Term Disability Payments
Mobil argues that it is entitled to a credit for any disability payments which are funded by the employer. Mr. Rareshide received twenty-six weeks of full pay and fifty-two weeks of half pay based upon the employer funded short-term disability plan.
*505 However, Mr. Rareshide argues that upon cross-examination of Ms. Denning-Rutledge, it was disclosed that Mobil had an agreement with employees that worker's compensation benefits will not be reduced as a result of payment of short-term disability payments. The short-term disability plan for Mobil was authenticated and read into the record by Ms. Denning-Rutledge.
Q. All right. Does this, Ms. Denning, represent an agreement between the workers of Mobil and Mobil itself that workman's compensation benefits will not be reduced, but that their (sic) short-term disability benefits will be reduced by comp benefits?
A. That's correct.
Q. Isn't that what it says? So, that under the very agreement that Mobil's employees have with Mobil, there will be no reduction in workman's compensation benefits as a paymentas a result of payment of short-term disability benefits?
A. That's correct.
LSA-R.S. 23:1225(C)(3) states the following as it relates to reducing short-term disability payments.
If an employee is receiving both worker's compensation benefits and disability benefits subject to a plan providing for reduction of disability benefits, the reduction of worker's compensation benefits required by Paragraph (1) of this Subsection shall be made by taking into account the full amount of employer funded disability benefits, pursuant to plan provisions, before any reduction of disability benefits are made.
LSA-R.S. 23:1225(C)(3)(emphasis added). Ms. Denning-Rutledge's testimony substantiates the fact that Mobil does not provide for the reduction or crediting of these benefits. Therefore, Mobil's argument is without merit.

6. Attorney's Fees & Penalties
Mobil contends that it has paid all medical expenses that were submitted to them in a timely manner and it should not have been found to be arbitrary or capricious in this respect. Mobil also contends that it had to conduct an investigation of this claim once it received notice of the claim on August 7, 1995. As part of its investigation, Mobil ordered an independent medical examination (IME) by Dr. deBoisblanc and paid the submitted medical expenses within fourteen days of Dr. deBoisblanc's report.
LSA-R.S. 23:1201(F) provides the basis for an award of attorney's fees and penalties. However, this provision is inapplicable if the claim is reasonably controverted. LSA-R.S. 23:1201(F). While Mobil was reasonable in seeking an IME, the delay associated with the IME was, in reality, not a factor for the delay in the payments.
Ms. Denning-Rutledge, the insurance adjuster for Mobil's wholly-owned subsidiary, National Union, subjectively refuted the opinion of Drs. Roach and Brach, and purposefully waited until she was able to receive a report stating that Mr. Rareshide could return to work before Mobil made any attempts to pay his medical expenses. Once Ms. Denning-Rutledge received Dr. Jones' report stating that Mr. Rareshide did not have asbestosis and could return to his previous employment, she immediately discontinued all benefits. She also failed to timely request an itemized bill from East Jefferson Hospital following Mr. Rareshide's lung surgery and relied solely upon the claimant to provide this information rather than gathering it from the hospital directly. As a result of her biased investigation, Mr. Rareshide's medical expenses were reported to a collection agency and his wages were subsequently garnished.
Throughout the hearing, Ms. Denning-Rutledge testified that she was the one who decided not to pay the benefits timely, and to discontinue benefits after December 4, 1995. In fact, Ms. Denning-Rutledge testified that her decision was not based on medical evidence but on her experience. Worker's compensation carrier tender must be reasonable and unconditional to avoid award of penalties and attorney fees for arbitrary and capricious handling of claim. Brumley v. Med Express Ambulance Service, 96-197 (La.App. 3 Cir. 6/5/96), 676 So.2d 662; see also Livings v. Langston Companies, *506 Inc./Continental Bag Div., 96-636 (La. App. 3 Cir. 12/5/96), 685 So.2d 405. The worker's compensation carrier in this matter was arbitrary and capricious in its refusal to pay claimant's expenses, and as a result, the WCJ was correct in awarding Mr. Rareshide attorney's fees. See Barbre v. Stevens Collision Center, 95-1133, (La.App. 4 Cir. 1/19/96), 671 So.2d 521, writ denied 96-0351 (La.3/22/96), 669 So.2d 1219; and Starks v. Universal Life, 95-1003 (La.App. 1 Cir. 12/15/95), 666 So.2d 387, writ denied 96-0113 (La.3/8/96), 669 So.2d 400.
Mobil further complains that the penalty was excessive because such a penalty should not have exceeded $2,000, but the WCJ assessed the penalty at $2,000 or twelve percent (12%) of the unpaid benefits, whichever is greater. Mobil's argument is clearly without merit. The statutory language is unmistakable: the $2,000 limit only applies to the $50 per calendar day penalty.
Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney's fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim.

LSA-R.S. 23:1201(F) (emphasis added). [WCJ] has great discretion in the award of attorney fees and penalties in a worker's compensation case, and exercise of such discretion will not be disturbed on appeal unless clearly wrong. Sterling v. Orleans Parish School Board, 96-0107 (La.App. 4 Cir. 6/26/96), 679 So.2d 167. As a result, Mobil is not entitled to a $2,000 limit on the twelve percent of any unpaid compensation or medical benefits, thus, the WCJ did not commit manifest error in assessing penalties against Mobil. Mr. Rareshide answered the appeal and asked that this Court assess additional penalties for the appeal. We, therefore, assess an additional penalty of $500 in attorney's fees on appeal for the arbitrary and capricious conduct of Mobil and its wholly-owned subsidiary, National Union.

7. Heart Attack
Mr. Rareshide further answers the appeal by contending that there is sufficient medical evidence to show that a reasonable possibility of a causal connection between the accident and the disabling condition, the heart attack, exists. He also argues that had it not been for his previous exposure to asbestos at the Mobil refinery, he would not have had the lung surgery which gave rise to the heart attack. Mr. Rareshide testified that he never had heart problems until after the lung surgery and even though he was an active smoker for approximately thirty-eight (38) years, he had never suffered from smoking like he has suffered from this surgery. As a result, the implication is that the stress from the surgery gave rise to the heart attack.
Dr. Gary Menszer, a board-certified cardiologist, admitted the claimant to East Jefferson General Hospital in August, 1995, following his heart attack. After performing a balloon angioplasty of the circumflex for this heart attack, Dr. Menszer noted two blockages of "long standing development", but could not identify any nexus between the heart attack and the work related stress.
LSA-R.S. 23:1021(7)(e) provides when a heart-related or perivascular injury should be considered a personal injury arising out of the course and scope of employment. LSA-R.S. 23:1021(7)(e). Under the statute, such an injury is not compensable unless it is demonstrated by clear and convincing evidence that:
(i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and
(ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness or death.
LSA-R.S. 23:1021(7)(e). In the instant case, Mr. Rareshide was susceptible to the same carcinogens as any other employee at the *507 Mobil refinery and often worked with other employees while performing his routine tasks. The stress that Mr. Rareshide complains of is not of such a nature as to isolate him from the other workers. Moreover, the fact that Mr. Rareshide experienced this heart attack, approximately two months after his last day of work, while constructing his fishing camp lends support to the premise that his injury was not caused by some physical exertion on his job. Thus, there is ample evidence to suggest that Mr. Rareshide's condition may have resulted from his being a cigarette smoker for 38 years.
This inability to show, by clear and convincing evidence, that his heart attack was the result of his employment makes this subsequent injury noncompensable under the Worker's Compensation Act. Thus, the WCJ was not manifestly erroneous in denying Mr. Rareshide compensation for this injury.

DECREE
For the reasons outlined above, we affirm the WCJ's evidentiary ruling. We affirm her ruling denying Mobil a credit/offset for short-term disability payments, her assessment of attorney's fees and penalties, and award an additional assessment of $500 in attorney's fees for this appeal. We further affirm her ruling that the heart attack was not compensable.
However, we amend the WCJ's award of TTD benefits so that claimant will receive such payments for the period through December 22, 1995, and we further amend the WCJ's ruling to include the payment of SEBs to Mr. Rareshide for the period following December 22, 1995.

AMENDED AND AFFIRMED AS AMENDED.
PLOTKIN, J., dissenting in part with written reasons.
PLOTKIN, Judge, dissenting in part with written reasons.
Because I disagree with the both majority's legal reasoning and the majority's conclusion on many of the issues presented by this appeal, I respectfully dissent in part from the decision affirming the trial court judgment. Although I have several concerns, as set out more fully below, my primary disagreement lies with the majority's decision concerning Mr. Rareshide's entitlement to supplemental earnings benefits (SEBs). The majority commits legal error which ignores the burden of proof imposed by Louisiana statutory and jurisprudential law on a plaintiff seeking to prove entitlement to SEBs in a worker's compensation case, awarding SEBs despite the fact the plaintiff in this case failed to present essential evidence to carry that burden of proof. In fact, the plaintiff failed to even prove the threshold question for entitlement to any type of worker's compensation benefitsi.e., that he was "disabled" as a result of his occupational disease. Moreover, the majority incorrectly approves the trial court's refusal to admit surveillance videotapes.

Mr. Rareshide's disability
First, I agree with the majority's conclusion affirming the finding of the worker's compensation judge that Mr. Rareshide's lung disease was employment-related. Unquestionably, the record supports a finding that Mr. Rareshide suffered from lung disease, as well as a finding that Mr. Rareshide was exposed to some asbestos during his 30-year tenure at the Tenneco/Mobil refinery. However, I am troubled by the majority's discussion of Mr. Rareshide's "disability" resulting from his lung disease. The evidence indicates that, after the surgery to correct the lung disease, Mr. Rareshide's only limitation resulting from the lung condition was a requirement that he not work in an environment where he would suffer exposure to asbestos greater than the concentration in "background" air. Because of that limitation, the majority indicates, in the second section of the opinion, that Mr. Rareshide is "disabled."
However, in the third section of the opinion, the majority concludes that Mr. Rareshide's disability is temporary (and apparently total), which seems inconsistent with the finding in the second section that Mr. Rareshide's continuing disability is a result of the limitation on the level of asbestos in the air where he works. If Mr. Rareshide is truly disabled as a result of that limitation *508 (which I question), his limitation would in fact be a permanent, partial disability, rather than a temporary, total disability.
Actually, a close reading of the third section of the opinion indicates that the majority is addressing the disability which was obviously present during the time that Mr. Rareshide was actually undergoing the surgical procedures, rather than the "disability" resulting from his permanent job limitation. The disability experienced by Mr. Rareshide while undergoing the surgical procedures, perhaps, was a temporary, total disability. The problem is that the opinion does not sufficiently explain all of these distinctions, resulting in some confusion.
Perhaps what the majority is trying to say is that Mr. Rareshide suffered some temporary, total disability during the time of his treatment, and that he continues to suffer some permanent, partial disability, as a result of the job limitation.

Entitlement to worker's compensation benefits
Assuming the majority finds that Mr. Rareshide was temporarily, totally disabled only during the time he was actually undergoing treatment for his lung condition, I have no problem with the conclusion that Mr. Rareshide's was entitled to a maximum of six months of TTD benefits for the period of time he was undergoing treatment for his lung disease.
Concerning Mr. Rareshide's alleged permanent, partial disability resulting from the restriction concerning the asbestos level in the air at his work environment, Mr. Rareshide failed to prove that the restriction indeed rendered him "disabled" for purposes of worker's compensation law. As the majority opinion notes, the asbestos caused Mr. Rareshide no physical impairment at the time of trial. The majority opinion does not define "disability" for purposes of the statutory scheme, but simply finds that the trial judge did not err in concluding that Mr. Rareshide was disabled "in view of the testimony and reports from the physicians who have examined this claimant."
Mr. Rareshide cannot be legally considered disabled, if he suffers from no physical impairment. The fact that Mr. Rareshide suffers from an occupational disease does not automatically render him "disabled." A two-step analysis for finding that a employee is "disabled" from work is required by LSA-R.S. 23:1031.1:(1) the plaintiff must prove the existence of an occupational disease, and (2) the plaintiff must prove that the occupational disease rendered him disabled. The Louisiana Supreme Court noted as follows in Coats v. American Telephone & Telegraph Co., 95-2670 (La.10.25/96), 681 So.2d 1243:
In examining the merits of an occupational disease claim, the threshold question is whether or not the claimant has sustained an occupational disease resulting from causes and conditions characteristic of and peculiar to his particular trade, occupation, process, or employment. Proof of such a causal connection need not be shown to an absolute certainty. It is sufficient that the claimant establish the cause of his disability by a reasonable probability. However, even assuming that a claimant proves the existence of an occupational disease, the claimant also has the burden of proving that the injury was disabling.

Id. at 1247.
Although I agree with the majority's conclusion that Mr. Rareshide met the first prong of the test for proving entitlement to worker's compensation benefits, the record evidence simply does not support the majority's conclusion that Mr. Rareshide proved the second leveli.e., disability. Moreover, the majority opinion contains no recitation of evidence to support the conclusion that Mr. Rareshide is disabled.
Even more disturbing than Mr. Rareshide failure to carry his burden of proving the existence of a "disability" is the majority's discussion concerning Mr. Rareshide's entitlement to SEB benefits. Mr. Rareshide failed to offer any evidence to support his claim that he is unable to earn 90 percent of his pre-injury wages, which is the first element in a cause of action for SEBs. The statute and the jurisprudence are clear concerning the plaintiff's burden of proof on the issue of SEBs. Citing the Louisiana Supreme Court's recent decision in Seal v. Gaylord *509 Container Corp., 97-0688 (La.12/2/97), 704 So.2d 1161 the majority correctly states that burden of proof in the opinion. However, immediately thereafter, the majority completely relieves Mr. Rareshide of that burden of proof, essentially assuming that Mr. Rareshide is entitled to SEBs because of his "age, limited education, and specialized work history." The majority concludes this issue by stating as follows: "Clearly, Mr. Rareshide cannot earn his pre-injury wages because he cannot return to his job and because he has no other skills other than that as a refinery worker." The facts cited are simply insufficient to carry Mr. Rareshide's burden of proof concerning entitlement to SEBs, especially considering the Louisiana Supreme Court's statements in Seal.
Moreover, the instant case is distinguishable from Seal on the SEB issue. In Seal, the plaintiff testified concerning his efforts to obtain a job within his work restrictions. Moreover, in Seal, the court noted that the "most compelling shortcoming" in the employer's evidence on the SEB issue was the fact that "no one at the mill notified Seal or his counsel that there were any jobs available within Seal's work restriction." The court also noted that the employer failed to identify any jobs at the mill where the plaintiff could start out earning 90 percent of his pre-injury salary. In the instant case, all the job offers would have involved the same salary Mr. Rareshide received prior to his disability.
Moreover, I disagree with the majority's conclusion that, once the burden shifted to the employer, Mobil failed to prove the availability of jobs where Mr. Rareshide could earn 90 percent of his pre-injury wages. The majority's conclusion is based entirely on the testimony of Mr. Rareshide's expert that the chance of asbestos "accidents" or "incidents" occurring at the plant was so great that essentially no job anywhere near the plant apparently even in the laboratory located across the highway from the refinerycould meet the limitations.
I disagree. For one thing, as the majority notes, Mr. Rareshide's physician approved two of the positions offered. Additionally, Mobil's environmental expert testified concerning extensive environmental monitoring which indicated that nowhere in the Mobil facility is the asbestos level above "background" on a typical day. She noted also that "background" could not be accurately sampled because of limitations on the testing instruments. Mobil offered Mr. Rareshide approximately eight jobs, all at the exact same salary he received prior to the accident.
Under the test enunciated in the majority's opinion, Mobil could not have carried its burden of proof unless it proved the availability of a job completely outside of any refinery which would pay Mr. Rareshide at least 90 percent of his pre-injury wages. That burden is practically impossible in this case, which involves a 52-year-old man with other, non-related, disabilities, who had worked his entire life in a refinery. The burden the majority would places the employer in this case is extremely strict, far beyond the requirements of the previous jurisprudence.

Admission of surveillance videos
Finally, I disagree with the majority's conclusion to the extent that it requires that a party offering surveillance videos establish "how the tapes were taken" and present a witness to authenticate them. The jurisprudence has never imposed such a requirement; surveillance videos are regularly admitted to impeach a plaintiff's testimony concerning his ability to perform physical tasks. Moreover, the Louisiana Supreme Court's recent decision in Chaisson v. Cajun Bag & Supply Co., 97-1225 (La.3/4/98), 708 So.2d 375, indicates that the restrictions on the admission of hearsay evidence in an ordinary proceeding are significantly lessened in worker's compensation proceedings because of the "more relaxed evidentiary standards in LSA-R.S. 23:1317." In that case, the court held that a worker's compensation judge "has the discretion to admit hearsay evidence in worker's compensation proceedings." The philosophy behind that decision supports the admission of the surveillance videos in the instant case.
NOTES
[1] Background has been defined at trial as being an average amount of asbestos in the indoor and outdoor air that is inhaled by all individuals regardless of their location.
[2] By "suitable job" we mean a job that claimant is not only physically capable of performing, but one that also falls within the limits of claimant's age, experience, and education, unless, of course, the employer or potential employer is willing to provide any additional necessary training or education. Banks, 696 So.2d at 557. Emphasis added.