681 So.2d 1243 (1996)
Billy W. COATS
v.
AMERICAN TELEPHONE & TELEGRAPH COMPANY.
No. 95-C-2670.
Supreme Court of Louisiana.
October 25, 1996.
*1244 Gordon Neal Blackman, Jr., Blackman & Blackman, Shreveport, for Applicant.
Robert A. Dunkelman, Blanchard, Walker, O'Quin & Roberts, Shreveport, for Respondent.
VICTORY, Justice.[*]
We granted certiorari in this case to review the court of appeal's determination that the claimant (1) did not suffer an "accident" as defined in the worker's compensation statute and (2) failed to prove that she was disabled such that recovery under the provisions of LSA-R.S. 23:1031.1 pertaining to occupational disease was precluded. For reasons more fully discussed below, we affirm the judgment of the court of appeal.

FACTS AND PROCEDURAL HISTORY
In 1972, Mrs. Billy W. Coats ("Mrs. Coats") began her employment with AT & T and continued until a mass plant layoff on April 19, 1991. Mrs. Coats' first job consisted of working on a conveyer using an airpowered screwdriver to assemble telephones. As early as March 1972, Mrs. Coats began complaining of pain in her right wrist. She continued to operate the air-powered screwdriver until 1982 when AT & T placed her on work restrictions to accommodate her complaints. At that time, Mrs. Coats was also referred by AT & T to Dr. Winston Brown, a neurosurgeon. Dr. Brown conducted a nerve conduction velocity test and an electromyography ("EMG") test. While the EMG results were normal, the nerve conduction velocity test was mildly suggestive of carpal tunnel syndrome. As a result of Dr. Brown's report, additional work restrictions were placed on Mrs. Coats.
On March 8, 1991, just ten days before receiving formal notice of her upcoming layoff, Mrs. Coats complained to the AT & T medical department of pain in her right wrist. She was referred to another neurosurgeon, Dr. Robert Schwendimen, Dr. Brown's partner, for repeat nerve conduction studies. Once again, the EMG was normal. The nerve conduction velocity studies showed normal motor latency and, as in 1982, a somewhat prolonged distal latency in the right medium nerve. In fact, Dr. James Hill, AT & T's expert who testified at trial, stated in his report that Dr. Schwendimen's 1991 tests indicated "improvement with respect to the previous study of 1982."
Later, at the behest of AT & T, Mrs. Coats was referred to Dr. Michael Haynie, an orthopedic surgeon. According to Dr. Haynie, Mrs. Coats' condition was not consistent with carpal tunnel syndrome, but instead suggested she had a ganglion. Not satisfied with Dr. Haynie's diagnosis, Mrs. Coats' husband suggested she see another neurosurgeon, Dr. W.S. Bundrick. Dr. Bundrick's report corroborated Dr. Haynie's opinion that Mrs. Coats appeared to have a ganglion, but also stated that Mrs. Coats had "an element of carpal tunnel syndrome" and that he was referring her to Dr. Jorge Martinez, another neurosurgeon, for further tests. Dr. Martinez indicated in his report that from a neurological point of view, Mrs. Coats did not have any evidence of carpal tunnel syndrome.
After her layoff on April 19, 1991, Mrs. Coats began receiving layoff benefits under *1245 the collective bargaining agreement between AT & T and the workers' union. When those benefits terminated in January of 1992, Mrs. Coats filed the present suit.[2] Out of an abundance of caution, AT & T began paying Mrs. Coats worker's compensation benefits after the termination of her layoff benefits.[3]
At the completion of trial, the Worker's Compensation Hearing Officer awarded Mrs. Coats Temporary Total Disability Benefits ("TTDB") from April 20, 1991 through January 5, 1992, the time period Mrs. Coats was being paid layoff benefits. The hearing officer also ordered AT & T to provide Mrs. Coats with 26 weeks of vocational rehabilitation and additional TTDBs for this period. Finally, after determining that AT & T was arbitrary, capricious, and without probable cause in its refusal to pay benefits, the hearing officer awarded Mrs. Coats penalties and attorney fees in the amount of $9,075.00 and cast AT & T with all legal interest and costs. The Second Circuit Court of Appeal reversed, holding that Mrs. Coats did not prove she suffered an accident. Furthermore, the court of appeal determined that Mrs. Coats failed to alleged occupational disease as a basis of recovery. We granted Mrs. Coats' writ to review this ruling.

DISCUSSION
It is well settled that Louisiana courts should interpret worker's compensation laws liberally in order to afford coverage. Harold v. La Belle Maison Apartments, 94-0889 (La. 10/17/94), 643 So.2d 752; Allen v. City of Shreveport, 93-2928 (La. 5/23/94), 637 So.2d 123. However, despite such liberal construction, the worker's burden of proving personal injury by accident is not relaxed and must be shown by a preponderance of the evidence. LSA-R.S. 23:1031; Nelson v. Roadway Express, Inc., 588 So.2d 350 (La.1991).
Accident is defined in LSA-R.S. 23:1021(1) as:
[A]n unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.
The court of appeal found that the hearing officer was manifestly erroneous in determining that Mrs. Coats had suffered an accident. Mrs. Coats contends that the court of appeal erred by substituting its judgment for that of the hearing officer.
The only evidence offered at trial to prove the existence of an accident was Mrs. Coats' testimony. As this Court stated in Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992), a worker's testimony alone may be sufficient to discharge his burden of proving that an accident occurred, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Therefore, if the worker testifies that she suffered an accident, a court must then look to see if the Bruno elements are satisfied.
Here, Mrs. Coats failed to testify as to the occurrence of a precipitous event. The entirety of her testimony leads to the conclusion that the alleged "accident" she suffered was simply a continuation of discomfort in her right wrist she had been having for many years. Her testimony reads as follows:
Q. You reported to AT & T's medical department on March 8th, 1991, complaining of problems with your hands?

*1246 A. Yes, that I was still being bothered with.
Q. When you say that you were still being bothered with it, it would be a fair statement, wouldn't it, to say that the problems you had had since 1982 had continued to bother you all the way up till [sic] 1991 when you were laid off?
A. Yes.
* * * * * *
Q. Was there any event that happened to you in March of 1991 that made the problems in your wrist worse at that particular time?
A. No, because they never stopped. It would always swell. I'm right handed and I have to use my right hand.
Q. Okay. So the problems that you had in 1991 were essentially the same type of problems you had had from '82 forward?
A. Yes.
As Mrs. Coats' testimony clearly shows, she did not suffer "a precipitous event happening suddenly or violently" as the statute requires.[4] The court of appeal was correct in finding that the hearing officer was manifestly erroneous in determining Mrs. Coats had suffered an accident as defined in LSA-R.S. 23:1021(1).
Mrs. Coats also cites as an assignment of error that the court of appeal incorrectly decided that she failed to plead occupational disease and was thus precluded from recovering on that basis. Although the court of appeal did state that Mrs. Coats failed to brief or plead occupational disease, it did not deny her benefits under LSA-R.S. 23:1031.1 on that basis. Instead the court of appeal stated:
The medical evidence, as well as Ms. Coats' own testimony, showed that she was capable of working under the same work restrictions AT & T had accommodated her with for many years. For this reason, though it was never briefed or pled by the claimant, we find that LSA-R.S. 23:1031.1, which provides relief for occupational disease, is inapplicable. (emphasis added).
To the extent the court of appeal's opinion is read to deny benefits because Mrs. Coats failed to brief or plead occupational disease, we disagree.[5] However, the court of appeal was correct when it determined that Mrs. Coats should not recover worker's compensation benefits under an occupational disease theory. Occupational disease is defined in LSA-R.S. 23:1031.1(B) as follows:
An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Occupational disease shall include injuries due to work-related carpal tunnel syndrome. Degenerative disc disease, spinal stenosis, *1247 arthritis of any type, mental illness, and heart-related or perivascular disease are specifically excluded from the classification of an occupational disease for the purpose of this Section.
In examining the merits of an occupational disease claim, the threshold question is whether or not the claimant has sustained an occupational disease resulting from causes and conditions characteristic of and peculiar to his particular trade, occupation, process, or employment. LSA-R.S. 23:1031.1; Peck v. Procter & Gamble Manufacturing Co., 586 So.2d 714 (La.App. 3 Cir.1991). Proof of such a causal connection need not be shown to an absolute certainty. It is sufficient that the claimant establish the cause of his disability by a reasonable probability.[6] However, even assuming that a claimant proves the existence of an occupational disease, the claimant also has the burden of proving that the injury was disabling. Miller v. Roger Miller Sand, Inc., 94-1151 (La. 11/30/94), 646 So.2d 330.
Recovery of TTDBs, which are provided for under the provisions of LSA-R.S. 23:1221(1)[7], hinges on meeting the burden of proof set forth in LSA-R.S. 23:1221(1)(c):
For purposes of Subparagraph (1)(a) of this Paragraph, whenever the employee is not engaged in any employment or selfemployment as described in Subparagraph (1)(b) of this Paragraph, compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment. (Emphasis added).
From January of 1982 until the day she was laid off, April 19, 1991, Mrs. Coats did not miss one day of work because of pain in her hands. (R. at 120). Furthermore, Mrs. Coats did not offer any medical evidence to show that she was "physically unable to engage in any employment." In fact, Dr. William Bundrick, Mrs. Coats' own physician, was of the opinion that she could return to work subject to certain restrictions similar to those already on Mrs. Coats since 1982. The record reflects that Mrs. Coats was on work restrictions since 1982 that prevented her from performing work that caused rotation of her wrists, repetitive motion of her hands, and any work that would require her to clamp or grip with her right hand. (R. at 120). Finally, Mrs. Coats' own testimony rebuts the notion that she was disabled as a result of her condition. On cross-examination, after claiming to be unable to perform any type of work because of her condition, Mrs. Coats admitted that had she not been laid off on April 19, 1991, she would still be working at AT & T today:
Q. And it's your testimony to this Court that you are unable to do any work whatsoever?
A. Yes.
Q. If you had not been laid off wouldn't you have been able to continue working at AT & T within the restrictions that they had had in place on you since 1982?
A. I would have had to.

*1248 Q. And why do you say you would have had to?
A. They were fixing to lay me off and I wasn't doing anything to get fired. I did my work.
Q. Let me make sure I understand you answer correctly. If you had not been laid off you would still be out at AT & T doing
A. Yes, where else would I be?
After a thorough examination of the record, we find that the court of appeal was correct in determining that Mrs. Coats failed to proof that she was disabled as a result of carpal tunnel syndrome. Thus, the court of appeal correctly determined that Mrs. Coats was not entitled to benefits pursuant to LSA-R.S. 23:1031.1.

CONCLUSION
The court of appeal correctly concluded that the evidence failed to support the hearing officer's determination that Mrs. Coats had suffered an accident in March of 1991. Rather, Mrs. Coats' own testimony clearly showed that the problems in her wrist were the result of a longstanding condition rather than an accident. Further, the court of appeal correctly decided that Mrs. Coats failed to prove by clear and convincing evidence that she was disabled, thus precluding recovery under the provisions of LSA-R.S. 23:1031.1.

DECREE
For the reasons stated herein, the judgment of the court of appeal is affirmed.
AFFIRMED.
JOHNSON, J., dissents.
NOTES
[*] Bleich, J., not on panel, Rule IV, Part 2, Sec. 3.
[2] In the present suit, Mrs. Coats is seeking Temporary Total Disability Benefits from April 20, 1991 through January 5, 1992. It should be noted that this 36 week time period is the same period for which Mrs. Coats was being paid the layoff benefits pursuant to the collective bargaining agreement between AT & T and the workers' union. Under the collective bargaining agreement, Mrs. Coats received a layoff allowance equal to her hourly salary of $10.16 for forty hours per week, totaling $14,630.40.
[3] LSA-R.S. 23:1204 provides:

Neither the furnishing of medical services nor payments by the employer or his insurance carrier shall constitute an admission of liability for compensation under this Chapter.
[4] Even the dissenters in the court of appeal acknowledged that Mrs. Coats failed to prove that an "accident" had occurred.
[5] As a general rule, appellate courts will not consider issues raised for the first time on appeal. Segura v. Frank, Nos. 93-1271 and 93-1401 (La. 1/14/94), 630 So.2d 714. However, Code of Civil Procedure art. 862 states that a court should grant relief to a party despite the fact that the party did not demand such relief in its pleadings:

Except as provided in Article 1703, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief.
This article was added to the Code of Civil Procedure to eliminate the "theory of the case" doctrine which had required a plaintiff to allege a specific theory of his case. Article 862 now allows a party to be granted any relief to which he is entitled under the pleadings and evidence as long as facts constituting a claim are sufficiently alleged. First South Production Credit Ass'n v. Georgia-Pacific, 585 So.2d 545 (La. 1991).
In the instant case, the court of appeal stated that Mrs. Coats failed to plead or brief occupational disease as an alternative theory of recovery. However, as stated above, this is not determinative of whether or not the issue of occupational disease was properly before the court. An examination of the record reveals that Mrs. Coats did allege facts such that a consideration of whether she suffered from carpal tunnel syndrome, an occupational disease, was properly before the court. As such, article 862 and the jurisprudence command that Mrs. Coats be granted any relief to which she is entitled under the pleadings and the evidence.
[6] Although certainly not without contradiction, medical reports from some physicians that examined Mrs. Coats state that she was suffering from a mild case of carpal tunnel syndrome. However, the issue of whether sufficient evidence was presented to warrant a finding of occupational disease is also pretermitted in light of our holding that Mrs. Coats failed to establish she was disabled.
[7] LSA-R.S. 23:1221 provides as follows:

Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
(1) Temporary Total.
(a) For any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two thirds percent of wages during the period of such disability.