740 So.2d 748 (1999)
Sheryl CROTWELL, Plaintiff-Appellee,
v.
HOLLOWAY SPORTSWEAR, Defendant-Appellant.
No. 32,038-WCA.
Court of Appeal of Louisiana, Second Circuit.
June 16, 1999.
*749 Hurlburt, Privat & Monrose by Shannon E. Seiler, Lafayette, Counsel for Appellant.
Susan Ford Fiser, Alexandria, Counsel for Appellee.
Before STEWART, GASKINS and KOSTELKA, JJ.
GASKINS, Judge.
The defendant, Holloway Sportswear, Inc., appeals from a determination by a workers' compensation judge that the plaintiff, Sheryl Crotwell, suffered an occupational disease as a result of her work for the defendant and that she was entitled to temporary total disability benefits, supplemental earnings benefits, medical benefits, and penalties and attorney fees. For the following reasons, we reverse the trial court judgment.

FACTS
The plaintiff began working at Holloway Sportswear (Holloway) in Winn Parish in June 1995. The plaintiff had worked in the cutting department but was transferred to the silk screen department approximately six months before her alleged injury. She operated a machine which printed multicolor designs on clothing. She claimed that on February 19, 1997, *750 while pulling on the silk screen machine to adjust it, she suffered a sudden, severe pain in her right shoulder. The plaintiff saw a doctor recommended by the company, who suggested that she see an orthopedic specialist. The plaintiff claimed that she worked at Holloway until March 7, 1997 when the pain became so severe that she could no longer continue. However it appears that the plaintiff did not formally report the accident to Holloway until March 11, 1997. She did not report a specific accident, but indicated that she had a repetitive shoulder injury.
The plaintiff sought workers' compensation benefits from Holloway, but her claim was denied. According to Holloway, the plaintiff failed to establish that she suffered a work-related accident as defined in the workers' compensation statutes.
The plaintiff filed a disputed claim for compensation on May 7, 1997, alleging that on February 19, 1997, while pulling on a machine in the course of her work she suffered a right shoulder injury, tendinitis, and impingement syndrome. She also alleged that she experienced a serious strain of her shoulder caused by repetitive work.
On September 4, 1997, she filed a supplemental and amending petition in which she alleged that on the date of the accident she felt a sudden and unexpected sharp pain in her right shoulder. She claimed that she had received various diagnoses including rotator cuff tendinitis and tendinitis impingement syndrome. She alleged that this qualified as an accident and stated that she reported the accident to her supervisor, who told her to keep working. She asserted that the defendant was arbitrary and capricious in failing to award her workers' compensation benefits.
The plaintiff later filed a second supplemental and amending petition alleging that, while working manually as a silk screen operator at the defendant's facility, the plaintiff felt a sudden and unexpected pain which resulted in weakness in her right shoulder. She reasserted that she had rotator cuff tendinitis, tendinitis impingement syndrome and also claimed a strain or sprain of the neck with right shoulder pain.
A hearing on the claim was held on March 17, 1998, in Alexandria. Following the hearing, the workers' compensation judge (WCJ) decided in favor of the plaintiff. In oral reasons for judgment, the judge observed that, in spite of the plaintiffs allegations that she suffered an accident, she was consistent in describing pain resulting from repetitive trauma to her shoulder. The judge found there was no accident, but that the plaintiff suffered from an occupational disease and was entitled to treatment from the doctor of her choice.[1] The WCJ found that the plaintiff was entitled to temporary total disability benefits from March 7, 1997, the day she ceased working at Holloway, until December 1, 1997, when she began working as a sitter for an elderly person. The WCJ also found that the plaintiff was entitled to supplemental earnings benefits (SEBs), and specified that the room and board the plaintiff received as partial compensation for her sitter's position was not to be considered in the SEBs calculation until the value of those items was established more clearly.
The WCJ found that Holloway ignored the possibility that the plaintiff had an occupational disease and therefore was arbitrary and capricious in denying benefits. She awarded the plaintiff $2,000.00 in penalties and $5,000.00 in attorney fees. A judgment incorporating these reasons was signed on April 24, 1998. The defendant appealed the judge's decision to this court.[2]

*751 OCCUPATIONAL DISEASE
Holloway argues that the WCJ erred in finding that the plaintiff suffered a compensable occupational disease as a result of her repetitive work duties. In support of this argument, Holloway contends that the question of whether the plaintiff had an occupational disease was not properly before the WCJ as an issue to be litigated at the hearing. According to Holloway, the plaintiff alleged that she suffered an accident, but never alleged any facts sufficient to suggest that occupational disease was an issue properly before the court. Holloway contends that it was "blind sided" by the WCJ's finding that the plaintiff suffered from a compensable occupational disease.
Such an argument was raised in Coats v. American Telephone and Telegraph Company, 95-2670 (La.10/25/96), 681 So.2d 1243. In that case, the supreme court found that La. C.C.P. art. 862 states that a court should grant relief to a party despite the fact that the party did not demand relief in its pleadings. According to that provision, except as provided in La. C.C.P. art.1703, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief. The court found that La. C.C.P. art. 862 allows a party to be granted any relief to which he is entitled under the pleadings and evidence as long as facts constituting a claim are sufficiently alleged.
The court in Coats found that failure to plead or brief an occupational disease as an alternative theory of recovery is not determinative of whether or not the issue of occupational disease was properly before the court. In that case, sufficient facts were alleged such that a consideration of occupational disease was properly before the court and therefore, the plaintiff should be granted any relief to which she was entitled under the pleadings and the evidence. Similarly, in the present case, although the plaintiff argued as her main theory of recovery that she suffered a work-related accident, she also stated in one disputed claim form that she had a serious strain of her shoulder caused by repetitive work. We find that, as in Coats, this was sufficient to raise the issue.
Holloway also argues that the plaintiff failed to prove that she suffered an occupational disease. The defendant contends that because the plaintiff was only engaged in silk screen work for six months, rather than twelve months or more, under La. R.S. 23:1031.1(D), it is presumed that she did not have an occupational disease. In order for the plaintiff to overcome the presumption, she must show by an overwhelming preponderance of the evidence that her occupational disease was contracted during the time she was engaged in silk screening. The defendant pointed out that none of the plaintiffs doctors concur on a specific diagnosis. Holloway also argues that the plaintiff presented no evidence that her disease was due to causes and conditions characteristic of and peculiar to her employment.
Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Seal v. Gaylord Container Corporation, 97-0688 (La.12/2/97), 704 So.2d 1161; Gilliam v. Manhattan/Whitaker Construction Company, 30,566 (La. App.2d Cir.5/13/98), 714 So.2d 101, writ not considered 98-1845 (La.9/4/98), 723 So.2d 429. In applying the manifest error-clearly *752 wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Seal v. Gaylord Container Corporation, supra; Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551. Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Thus, if the factfinder's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Seal v. Gaylord Container Corporation, supra.
La. R.S. 23:1031.1 governs occupational diseases and provides in pertinent part:
A. Every employee who is disabled because of the contraction of an occupational disease as herein defined, or the dependent of an employee whose death is caused by an occupational disease, as herein defined, shall be entitled to the compensation provided in this Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment.
B. An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Occupational disease shall include injuries due to work-related carpal tunnel syndrome. Degenerative disc disease, spinal stenosis, arthritis of any type, mental illness, and heart-related or perivascular disease are specifically excluded from the classification of an occupational disease for the purpose of this Section.
The defendant argues that although the plaintiff had been employed at Holloway since 1995, she had only been engaged in silk screening for six months prior to her alleged injury. Therefore, she was required to prove that she suffered from an occupational disease by an overwhelming preponderance of the evidence. La. R.S. 23:1031.1(D) provides:
D. Any occupational disease as herein listed contracted by an employee while performing work for a particular employer in which he has been engaged for less than twelve months shall be presumed to be non-occupational and not to have been contracted in the course of and arising out of such employment, provided, however, that any such occupational disease so contracted within the twelve months' limitation as set out herein shall become compensable when the occupational disease shall have been proved to have been contracted during the course of the prior twelve months' employment by an overwhelming preponderance of evidence.
It is unclear from the jurisprudence construing this provision whether the employee must merely work for the employer for twelve months prior to the time the alleged occupational disease arose, or whether he must be engaged in the actual work he claims caused the occupational disease for twelve months before the presumption that the disease is non-occupational will cease to apply. Generally, this provision, requiring proof of an occupational disease by an overwhelming preponderance of the evidence, has been applied where the employee has not been employed by the employer for more than twelve months before the manifestation of the alleged occupational disease. See for example Gilliam v. Manhattan/Whitaker Construction Company, supra; Oliveaux v. Riverside Nursing Home, 29,419 (La.App.2d Cir.4/2/97), 691 So.2d 340; Dibler v. Highland Clinic, 27,274 (La.App.9/27/95), 661 So.2d 588. We do not reach a discussion of this argument because, as will be demonstrated below, we find that the plaintiff has failed to show by a preponderance of the evidence that she suffers from an occupational disease.
*753 In determining the merits of an occupational disease claim, the threshold question is whether or not the claimant has sustained an occupational disease resulting from causes and conditions characteristic of and particular to his particular trade, occupation, process or employment. Coats v. American Telephone and Telegraph Company, supra. A claimant asserting an occupational disease must prove by a preponderance of the evidence that she suffers a disability which is related to the employment disease, that she contracted the disease during the course of her employment, and that the disease is the result of the work performed. Billington v. General Motors Corporation, 31,585 (La.App.2d Cir.2/24/99), 728 So.2d 966; Hymes v. Monroe Mack Sales, 28,768 (La. App.2d Cir.10/30/96), 682 So.2d 871.
It is sufficient to prove the cause of the disability by a reasonable probability. The claimant will fail if he shows only a possibility that the employment caused the disease, or that other causes not related to the employment are just as likely to have caused the disease. Expert testimony is required to support a finding of an occupational disease. Hymes v. Monroe Mack Sales, supra.
The causal link between the employee's illness and work-related duties must be established by a reasonable probability. Seal v. Gaylord Container Corporation, supra. Once the employee has established the existence of an occupational disease, for his illness to be compensable, the employee must further establish that the illness is disabling. In other words, after the employee has established the existence of an occupational disease, then he must further establish that he meets the criteria for one or more of the statutory disabilities, that is (1) temporary total disability, (2) permanent total disability, (3) supplemental earnings benefits, or (4) permanent partial disability. Seal v. Gaylord Container Corporation, supra.
The plaintiff testified that she had been working in the silk screen department for six or seven months when she began experiencing pain in her right shoulder. She testified that she felt a sharp pain and a burning sensation in her shoulder. She also stated that the muscle strain began to be a problem when maintenance workers tightened the machine to keep the silk screen design in line. She claimed that the shoulder initially swelled but that when the swelling subsided, she had weakness in her right arm. She claimed that she told her supervisor, Laurene Fallis, about the pain, but that she was ignored.
Judy Mamon, a co-worker at Holloway, testified that the plaintiff said that the machine was hard to work after it was tightened up and the plaintiff also said that her repetitive work duties caused her pain. According to Ms. Mamon, the plaintiff never told her that she had a sudden, sharp pain in her shoulder.
Laurene Fallis, the plaintiff's supervisor at Holloway, testified that the plaintiff merely complained of her shoulder hurting a little, but never reported that she suffered an accident on February 19, 1997. According to Ms. Fallis, after the date the plaintiff claims she was injured, her productivity actually increased.
Carolyn Harvey, the office manager at Holloway, testified that on March 11, 1997 she had a conversation with the plaintiff in which she stated that she had hurt her arm. Ms. Harvey asked the plaintiff to come in and fill out an accident report. At that time, Ms. Harvey thought the plaintiff was complaining of problems caused by job repetitiveness and not a sudden accident.
Valerie Hebert testified that on March 13, 1997, the plaintiff told her that she had experienced shoulder pain for a couple of weeks. At that time, the plaintiff was authorized to go to Dr. Julio Iglesias in Winnfield.
The depositions and medical records of the plaintiff were filed into evidence. Dr. Iglesias stated that he first saw the plaintiff *754 on March 18, 1997. She complained of right shoulder pain radiating to her fingers. She did not state that she had an accident at work, but merely stated that her "shoulder just went out." His tentative diagnosis was bursitis. She was given an injection and anti-inflammatory medications. The plaintiff returned on March 27, 1997. Her inflammatory medications were changed and x-rays were ordered. Her x-rays were essentially normal. When she returned on April 3, 1997, the plaintiff still complained of pain and Dr. Iglesias determined that she should see an orthopedic surgeon.
Dr. Bundrick, an orthopedic surgeon, saw the plaintiff on April 14, 1997. She told him that her right shoulder started swelling on February 19, 1997 but she did not describe a specific accident. He felt that her problems were caused by the repetitive nature of her work. He thought she had tendinitis in her shoulder with impingement syndrome. X-rays of the plaintiff's shoulder did not reveal any bony abnormalities. Dr. Bundrick stated that the plaintiff never complained to him about neck pain.
On September 4, 1997, the plaintiff went to the emergency room at Huey P. Long Medical Center and was given a working diagnosis of a probable partial tear of the rotator cuff and tendinitis.
Dr. Vanda Davidson, an orthopedic surgeon, saw the plaintiff on November 17, 1997. At that time, the plaintiff claimed that she strained her neck and shoulder while working in February. She told Dr. Davidson that she had a sudden, severe pain in her shoulder while working on the silk screen machine on February 19, 1997. The doctor thought the plaintiff had a disc in her neck undergoing a deterioration process, but needed an MRI to make a diagnosis. He stated that he thought "she probably had a problem in the neck area that was referred to the shoulder and arm" and suggested an MRI of the neck for further evaluation. The doctor stated that the problems he noted with the plaintiff's neck were degenerative in nature or related to an injury that occurred years ago. Dr. Davidson opined that the disc problem in the plaintiff's neck was causing the pain in her arm. He observed that the x-rays of the plaintiff's shoulder were normal with no sign of arthritis, bursitis or rotator cuff problems. He also stated that he did not find that the plaintiff had impingement in her shoulder. In fact, in Dr. Davidson's deposition he stated, "The patient had basically as normal a shoulder as I have ever seen on an x-ray." Dr. Davidson stated that he was not sure of a diagnosis, but if an MRI was normal, she should be able to return to light duty work, and with physical therapy, could be able to return to work on the silk screen machine in 6-8 weeks.
Based upon our review of the evidence in this case, we conclude that the plaintiff failed to prove that she had a compensable occupational disease. As stated above, expert testimony is required to support a finding of occupational disease. In this case, the medical testimony presented by the plaintiff fails to establish any definitive diagnosis. The plaintiff initially complained of shoulder pain. The x-rays of her shoulder done by Dr. Iglesias, Dr. Bundrick and Dr. Davidson were all normal. Dr. Iglesias tentatively diagnosed the plaintiff with bursitis. Dr. Bundrick diagnosed tendinitis with impingement syndrome. An emergency room visit gave plaintiff a "working diagnosis" of rotator cuff tear and tendinitis.
However, when the plaintiff saw Dr. Davidson, she complained of pain in her neck as well as her shoulder. Dr. Davidson found that the plaintiff's shoulder was normal, but found that the plaintiff had a deteriorating disc in her neck which was causing her arm pain. La. R.S. 23:1031.1(B) specifically excludes degenerative disc disease as an occupational disease.
Viewing the medical evidence as a whole, we do not find that the plaintiff *755 established by a preponderance of the evidence that she sustained an occupational disease. In fact, the plaintiff has presented only medical evidence showing conflicting opinions about the existence and nature of a shoulder and/or neck malady. The plaintiff complains that she needed an MRI to establish a definitive diagnosis and this was denied by the defendant. We note that the only request for an MRI in this record concerns the plaintiff's neck, which is clearly not compensable.
Therefore, the plaintiff has failed to show that she had a disability related to an employment disease, that she contracted the disease during the course of her employment or that the disease was the result of work preformed. Said another way, the plaintiff simply failed to prove that she had a compensable occupational disease. The opinion of the WCJ that the plaintiff had an occupational disease is not reasonable and therefore is manifestly erroneous and clearly wrong. Accordingly, we must reverse the judgment of the WCJ who found that the plaintiff proved entitlement to workers' compensation benefits.

CONCLUSION
For the reasons stated above, we find that the WCJ erred in holding that the plaintiff had a compensable occupational disease. Accordingly, we reverse the judgment finding that the plaintiff sustained an occupational disease and awarding her temporary total disability benefits, supplemental earnings benefits, medical benefits and penalties and attorney fees. Judgment is hereby rendered in favor of the defendant, Holloway Sportswear, rejecting the claims of the plaintiff, Sheryl Crotwell. Costs in this court are assessed to the plaintiff.
REVERSED AND RENDERED.
NOTES
[1] We note that the WCJ specifically found that no accident occurred in this case. The plaintiff has not challenged this finding on appeal. Therefore, that portion of the judgment is not before this court for review.
[2] On November 5, 1998, the plaintiff filed a motion to dismiss the appeal, contending that it should have been brought in the Third Circuit Court of Appeal. She noted that the hearing was held in Alexandria and a preliminary discovery issue had been decided in this case by the third circuit on a writ application. In opposition to the motion to dismiss, the defendant noted that the accident occurred in Winn Parish, which also appears to be the domicile of the plaintiff. According to the defendant, the hearing was held in Alexandria partially because the workers' compensation office reassigned Winn Parish cases to the Alexandria division after the plaintiff's disputed claim was filed. On December 23, 1998, this court denied the motion to dismiss, finding that jurisdiction over the appeal is proper in this court.