| .PICKETT, Judge.

FACTS

Dennis Drouillard began working as a patrolman with the City of Vinton Police Department in 1984. He continued working with the department in various capacities and was elected Chief of Police in 1992. He was re-elected in 1996. Drouil-lard resigned effective June 9, 2000, for reasons unrelated to his health.
While employed with the department, Drouillard became aware he had contracted Hepatitis C. On June 12, 2000, he filed a disputed claim for compensation alleging he contracted the disease while working for the department. He could not point to a specific instance when he might have contracted the disease. He indicated that as a police officer he had been in contact with blood products when breaking up fights, had been spit on, had been stuck by needles when emptying pockets, and had waste thrown on him by inmates at the jail.
In 1988, Drouillard gave a blood donation with LifeShare which was rejected because tests revealed elevated liver enzymes. As there was no specific test for Hepatitis C in 1988, the only indicator of the presence of the virus would have been elevated liver enzymes.
In 1991, Drouillard again donated blood with LifeShare. This donation was also rejected because it tested positive for Hepatitis C Virus anti-bodies (anti-HCV), an indication that a person has been infected. At that time Drouillard made an appointment to see Dr. Crookshanks, whose records show he ordered blood tests that showed Drouillard positive for anti-HCV. No treatment was ordered at this time, and Drouillard denies that Dr. Crook-shanks told him he was positive for anti-HCV.
In 1999, Drouillard again donated blood to LifeShare and, once again, the donation was rejected. In a letter dated June 21, 1999, LifeShare informed Drouillard |2his blood tested positive for anti-HCV. Drouil-lard made an appointment with Dr. Schlamp, who confirmed he was in fact positive for anti-HCV and diagnosed Drouillard with a chronic hepatitis C viral infection. Dr. Schlamp referred Drouil-lard to. Dr. Nichols for treatment. Dr. Nichols ran tests and began treatment *400 with Rebetron therapy in September 1999. The treatment caused fatigue and depression. As a result of this treatment, Drouil-lard went on sick leave on November 17, 1999. The treatment was ultimately successful and the virus is virtually eradicated from his body.
In the course of treatment, Drouillard indicated he had not had a blood transfusion and did not use intravenous drugs. He got a tattoo in 1975, which testimony indicated can be a source of infection. Dr. Nichols testified that some people contract the disease with no identifiable risk factors.
Drouillard filed a disputed claim for compensation on June 12, 2000. Following a trial, the workers’ compensation judge found he had not proven he contracted Hepatitis C during his employment. It is from this judgment the plaintiff appeals.

ASSIGNMENTS OF ERROR

Drouillard asserts two assignments of error:
1. It was manifest error for the WCJ to conclude that claimant failed to carry the burden of proof necessary to establish that he contracted Hepatitis C during the course and scope of his employment, as a result of the work he performed.
2. It was manifest reversible error for the WCJ to accept and introduce into the record of this matter evidence and correspondence submitted by defendant after the case had been fully submitted.

j,DISCUS SION

The appellant premised his claim on the theory that Hepatitis C is an occupational disease under La.R.S. 23:1031.1, not that he contracted the disease as a result of an accident. La.R.S. 23:1031.1 states, in pertinent part:
A. Every employee who is disabled because of the contraction of an occupational disease as herein defined, or the dependent of an employee whose death is caused by an occupational disease, as herein defined, shall be entitled to the compensation provided in this Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment.
B. An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Occupational disease shall include injuries due to work-related carpal tunnel syndrome. Degenerative disc disease, spinal stenosis, arthritis of any type, mental illness, and heart-related or perivascular disease are specifically excluded from the classification of an occupational disease for the purpose of this Section.
The supreme court discussed the burden of proof in proving an occupational disease in Coats v. American Tel. & Tel. Co., 95-2670, p. 7 (La.10/25/96); 681 So.2d 1243, 1247 (footnote omitted).
In examining the merits of an occupational disease claim, the threshold question is whether or not the claimant has sustained an occupational disease resulting from causes and conditions characteristic of and peculiar to his particular trade, occupation, process, or employment. LSA-R.S. 23:1031.1; Peck v. Procter & Gamble Manufacturing Co., 586 So.2d 714 (La.App. 3 Cir. 1991). Proof of such a causal connection need not be shown to an absolute certainty. It is sufficient that the claimant establish the cause of his disability by a reasonable probability. *401 However, even assuming that a claimant proves the existence of an occupational disease, the claimant also has the burden of proving that the injury was disabling. Miller v. Roger Miller Sand, Inc., 94-1151 (La.11/30/94), 646 So.2d 330.
Thus, the appellant had the burden of proving, by a reasonable probability, that he contracted Hepatitis C as a result of his employment, and that the disease was disabling. The workers’ compensation judge found that he had not met that burden 14of proof. This is a factual finding that this court will reverse only upon a showing that the workers’ compensation judge was manifestly wrong or clearly erroneous. Rosell v. ESCO, 549 So.2d 840 (La.1989); Duhon v. Snelling Personnel Serv., 97-347 (La.App. 3 Cir. 10/8/97); 702 So.2d 922.
To support his claim, the appellant testified that he had been pricked by needles when emptying the pockets of detainees 4 or 5 times since he began working for the department. He said he performed CPR on people and had been in contact with blood, spit and other bodily fluids several times during the course of his employment. There was no evidence that he had Hepatitis C before he began working for the department. He denied having a blood transfusion or using intravenous drugs. He did have a tattoo in 1975, which could be a risk factor.
The workers’ compensation judge apparently gave great weight to the testimony of the appellant’s doctors. Dr. P. Hooper Nichols, a gastroenterologist who treated the claimant, testified that it was possible that he contracted Hepatitis C as a result of his employment, but it was also possible that he contracted the disease as a result of getting a tattoo or some other cause. Dr. Kevin Schlamp, the claimant’s family doctor who diagnosed the disease, testified that it is possible to get Hepatitis C from getting a tattoo, but it is a “more minor route of transmission than a needle stick from a person that’s an I.V. drug abuser.” He also agreed that there are cases where there is no identifiable cause of transmission.
While the appellant established that there is a possibility that he contracted the disease as a result of his employment, the evidence presented supports the workers’ compensation judge’s finding that the appellant failed to establish a reasonable probability that he contracted Hepatitis C as a result of his employment. Thus, this assignment of error lacks merit.
| ¡/The appellant’s second assignment of error concerns an article and letter that the employer’s counsel submitted to the workers’ compensation judge after the trial regarding transmission of Hepatitis C through tattoos. The appellant sent a letter objecting to this correspondence, but no action was taken by the workers’ compensation judge regarding this objection. The appellant argues the submission of additional evidence following the conclusion of a hearing constitutes reversible error. We disagree. There is no indication the workers’ compensation judge gave any weight to the correspondence, but relied on the testimony of the appellant and his physicians in reaching her decision. This assignment of error lacks merit.
The decision of the workers’ compensation judge is affirmed. All costs of this appeal are assessed against the appellant.
AFFIRMED.