GAIDRY, J.
|?,The claimant-appellant, Arthur Burns, appeals an adverse judgment of the Office of Workers Compensation. Administration, District 5, dismissing his claim for workers’ compensation benefits instituted against his employer, Guarantee Service Team of Professionals. For the following reasons, we affirm the judgment in part and dismiss the appeal in part.
FACTS AND PROCEDURAL HISTORY
The claimant, Arthur Burns, was employed by Guarantee Service Team of Professionals (the employer) as the crew leader of an air duct cleaning crew. He claims that he suffered a compensable shoulder injury as the result of an accident in the course and scope of that employment. He instituted his claim for compensation by filing a claim form on March 10, 2003, alleging an accidental injury on October 3, 2002. According to the claim form, the accident occurred in the course of a duct cleaning job at Our Lady of the Lake Regional Medical Center in Baton Rouge. In the form, Mr. Burns stated that he was lifting a heavy ten-inch diameter hose over his head, trying to connect it to a trunk line, when his left shoulder was dislocated. He also stated that a few days later, he was unable to work due to recurrent shoulder dislocations. Mr. Burns further claimed that the accident was reported sometime in October 2002 to Danny Bowers, his employer’s manager.
In its answer to the original claim form, filed on May 9, 2003, the employer denied that Mr. Burns sustained an injury in the course and scope of his employment at the time alleged. It further affirmatively alleged that he failed to report the described accident prior to filing his compensation claim, and that there was no accident within the statutory definition.
lsOn September 8, 2003, Mr. Burns moved to amend and supplement his claim form, and that motion was granted by the workers’ compensation judge (WCJ). The claim was amended to clarify that he had no independent recollection of the accident date, and to allege that it actually occurred between September 16 and September 21, 2002.[1] He further alleged a wrist injury as the result of a separate accident. In its answer to the amended claim form, the employer denied the occurrence of the alleged accidents.
According to the employer, no injury report was prepared, and none is present in the record. Mr. Burns testified at trial that the accident occurred in September of 2002 in the course of a duct cleaning job that lasted about two weeks, although originally scheduled for one week. He explained that he was standing on a ladder while holding a ten-inch hose and attempting to drill a screw into a flange which *735 secured a trunk line for ductwork. While so engaged, he lost his balance and fell against an adjacent wall, striking his left shoulder. After straightening the tilted ladder, he climbed down and advised a coworker assisting him, Michael Moses, that his arm was sore, and requested another co-worker, Juan Manchester, to complete the immediate task. Mr. Burns further testified that he continued to work for his employer through January 2003, but according to his account, only in a supervisory capacity.
Mr. Moses testified by deposition that he recalled an incident during the Our Lady of the Lake job which caused Mr. Burns to complain of shoulder pain, but it involved the lifting of a heavy piece of equipment known as the “General.” He specifically denied any other incident in which Mr. Burns was injured, and also denied being informed by Mr. Burns of any other incident in which he was injured.
[¿Mr. Manchester also testified by deposition. He denied witnessing or having knowledge of any specific accident to Mr. Burns during the Our Lady of the Lake job, although he did corroborate Mr. Burns’s complaints of shoulder pain during that time period.
Joseph Hawkins, another co-worker, testified at trial that he was hired to assist Mr. Burns because he was unable to perform physical aspects of the duct cleaning due to an arm injury which occurred while he was pulling a hose on the job. At the time Mr. Hawkins began working, the Our Lady of the Lake job was in progress.
Mr. Bowers, Mr. Burns’s supervisor and the employer’s project manager, testified that Mr. Burns never reported any work-related accident, but acknowledged that he did complain of arm soreness during the course of the Our Lady of the Lake job. Mr. Bowers also testified that Mr. Burns had complained of shoulder pain on occasions both prior to and after September 2002.
William Folks is the owner of the employer company. He testified that although he was aware of Mr. Burns’s complaints of general soreness around September 2002, Mr. Burns attributed his complaints to “arthritis,” and expressly denied the occurrence of any work-related accident upon being questioned by Mr. Folks.
On September 18, 2002, Mr. Burns was examined at the emergency room of Baton Rouge General Medical Center. The emergency department record stated that Mr. Burns was complaining of left wrist pain after a “metal pipe” fell on it. A nurse’s note contains the additional information that Mr. Burns was complaining of left wrist pain after hitting his arm at work.
IfiOn October 3, 2002, Mr. Burns presented at the emergency room of Earl K. Long Medical Center in Baton Rouge. At trial, he confirmed that this was the first occasion on which he sought treatment for his shoulder injury. The initial nurse’s assessment in the record of that visit noted that Mr. Burns was complaining of left shoulder dislocation and that he reported a history of that complaint. The emergency room physician’s assessment recorded Mr. Burns as stating, “I think my left shoulder is out of place” and “It’s been slipping in and out,” and denying recent trauma. Mr. Burns was also recorded as saying that he had “laid [sic] down on [a] couch over [the] weekend and it came out,” and that “[his] mother straightened [his] arm and it went back in.”
An MRI study of the left shoulder was performed on February 7, 2003, and revealed degenerative changes and impingement of the acromioclavicular joint, bursitis, chronic tendinopathy, and a large *736 amount of joint effusion. On its “trauma” setting, the MRI study revealed the possibility of a Hill-Sachs fracture and bone contusions, with an alternate differential diagnosis of inflammatory arthritis “if there is no history of trauma.”
Mr. Burns first consulted Darryl W. Peterson, M.D., an orthopedic surgeon, on October 8, 2003. On his patient registration form, Mr. Burns identified his areas of complaint as his left shoulder and left wrist, and stated that he was injured in an accident at Our Lady of the Lake Hospital on October 3, 2002. Dr. Peterson .eventually performed arthroscopic decompression surgery on June 25, 2004 to relieve the shoulder joint impingement. His operative report documented the large osteo-phyte and osteoarthritis seen in diagnostic studies, but there is no mention of any fracture or bone contusion suggestive of trauma.
IfiThe trial of this matter was held on October 11, 2004. After hearing the testimony and reviewing the exhibits introduced at trial, the WCJ summarized her factual findings and ruled in favor of the employer and against Mr. Burns, dismissing his claim for compensation for his left shoulder injury. The WCJ also found that Mr. Burns'proved his alleged left wrist injury from the separate accident, but noted that there was no disability attributable to that injury and no related claim for medical benefits made.
The WCJ’s judgment was signed on November 4, 2004. The judgment incorporated her factual finding that Mr. Burns failed to prove a work-related accident causing his left shoulder injury, and dismissed his compensation claim with prejudice. The judgment also incorporated the WCJ’s factual finding of a work-related left wrist injury, in the form of a “judgment in favor of the claimant and against the employer” on that issue.
Mr. Burns .now appeals, assigning as error the WCJ’s finding that he failed to meet his burden of proof of the occurrence of a compensable accident.
STANDARD OF REVIEW
In a workers’ compensation case, as in other civil cases, the appellate court’s review of factual findings is governed by the manifest error or clearly wrong standard. Peters v. Harmsen, 03-1296, p. 4 (La.App. 1st Cir.4/2/04), 879 So.2d 157, 160. In order to reverse a factual determination by the trier of fact, the appellate court must apply a two-part test: (1) the appellate court must find that a reasonable factual basis does not exist in the record for the finding; and (2) the appellate court must further determine that the record 'establishes that the finding is clearly wrong (manifestly erroneous). Stobart v. State through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). Further, when factual |7findings are based upon determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trier of fact’s findings. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
DISCUSSION
For purposes of workers’ compensation, an “accident” is statutorily defined as “an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.” La.R.S. 23:1021(1).
A workers’ compensation claimant has the burden of proof to establish that a work-related accident occurred by a pre *737 ponderance of the evidence. Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La.1992). In determining whether a worker has shown by a preponderance of the evidence that an injury-causing accident occurred in the course and scope of employment, the trier of fact is expected to focus on the issue of credibility because, absent contradictory circumstances and evidence, a claimant’s testimony should be accepted as true. Id. In Bruno, the Louisiana Supreme Court held that a worker’s testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident; and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident. Id. Therefore, if the worker testifies that he suffered an accident, a court must then look to see if the Bruno elements are satisfied. Coats v. American Tel. & Tel. Co., 95-2670, p. 5 (La.10/25/96), 681 So.2d 1243, 1245.
1 RIf the evidence leaves the probabilities of the existence of a work-related accident equally balanced, the claimant has failed to carry his burden of proof by a preponderance of the evidence. See Harrison v. Baldwin Motors, 03-2682, p. 4 (La.App. 1st Cir.11/3/04), 889 So.2d 313, 316, writ denied, 05-0249 (La.4/1/05), 897 So.2d 609. In other words, if the evidence shows only a possibility of a causative accident or leaves it to speculation or conjecture, the claimant has failed in his burden of proof. Id.
On cross-examination at trial, Mr. Burns was confronted with a contradictory account of the mechanism of the shoulder injury contained in his answers to interrogatories. There, he had described the incident as involving a vacuum hose which had “ripped forward” and “caused [him] to pull [his] shoulder while standing on the ladder and trying not to fall.” At trial, he admitted feeling shoulder pain after the lifting incident with the “General,” but had denied the occurrence of the specific incident described by Mr. Moses in his prior deposition.
The factual evidence relating to the alleged accident, apart from Mr. Burns’s own testimony, is circumstantial at best and contradictory. The only independent eyewitness testimony to an accident related to the lifting incident with the “General,” which Mr. Burns himself described as occurring after the accident at issue.
The relative timeline of Mr. Burns’s wrist injury and the Our Lady of the Lake job severely narrows the time frame within which the accident described by Mr. Burns could have occurred.[2] That circumstance alone casts |flserious doubt on his version of the accident, as the WCJ observed. Further, the complete absence of any reference to an accident or trauma in the *738 hospital record of October 3, 2002, the first occasion of treatment for the shoulder complaint, likewise creates doubt as to the accuracy of Mr. Burns’s account. That circumstance is further compounded by the failure of Mr. Burns to inform Dr. Peterson of the history of the shoulder dislocation given at the time of the October 3, 2002 hospital visit.
Although ample corroborative evidence exists to support Mr. Burns’s complaints of shoulder pain and dislocation from October 2002 and thereafter, no independent testimony or objective documentary evidence reasonably corroborates the occurrence of the accident described by Mr. Burns. The WCJ, who made the same observation, correctly concluded that the elements of the Bruno standard were not established, and that her determination of whether a compensable accident occurred ultimately hinged'on a credibility call.
The record demonstrates a reasonable factual basis for the WCJ’s credibility determinations and ultimate conclusion that Mr. Burns failed to meet his burden of proof of the occurrence of a compensable work-related accident. Viewing the evidence relating to the claimed accident itself in light of the Bruno standard, we must conclude that the WCJ’s determination in that regard is not manifestly erroneous.
Accordingly, we affirm the judgment of the WCJ in favor of the employer, dismissing Mr. Burns’s claim as to the alleged left shoulder injury. In doing so, however, we note that the portion of the WCJ’s | judgment addressing the left wrist injury grants no relief, and seemingly contradicts the judgment dismissing Mr. Burns’s claims. In that regard, it constitutes a bare recitation of a factual finding which the WCJ in her oral reasons acknowledged carried no result. Louisiana Code of Civil Procedure article 1918 requires that written reasons for judgment (including findings of fact) be set out in an opinion separate from the judgment. See also La. C.C.P. art. 1917(A). Our law also requires that a valid judgment be precise, definite, and certain. Davis v. Farm Fresh Food Supplier, 02-1401, p. 4 (La.App. 1st Cir.3/28/03), 844 So.2d 352, 354. The factual finding relating to the left wrist injury is, at best,, only an interlocutory factual ruling and, as such, does not carry the finality of a judgment. Id., 02-1401 at p. 3, 844 So.2d at 354. As it determines no rights and grants no -relief, it involves a moot issue and is not properly the subject of a final judgment. See La. C.C.P. art. 1841. We will therefore amend the WCJ’s judgment to vacate that paragraph granting “judgment” in favor of Mr. Burns as to his left wrist injury.
DECREE
The judgment of the Office of Workers Compensation Administration, District 5, dismissing the claim for workers’ compensation of the claimant-appellant, Arthur Burns, is affirmed, but amended for the purpose of vacating the paragraph reading “IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of the claimant and against the employer as to the existence of an injury in the course and scope of employment to the claimant’s left wrist.” The costs of this appeal are assessed to the claimant-appellant.
AMENDED AND, AS AMENDED, AFFIRMED.
DOWNING, J., concurs.

. In his brief in this appeal, Mr. Burns now contends that the accident at issue occurred on or within a few days after September 19, 2002.

. Mr. Burns’s trial testimony confirmed that although he was engaged in the same type of work task at the time of both accidents, drilling on a flange, the alleged accident was not the same as that involving the wrist injury. The wrist injury occurred on September 17 or 18, 2002. September 18, 2002 was a Wednesday. Mr. Burns unequivocally stated that the wrist injury occurred during or immediately prior to an earlier job at a plant, since his supervisor did not want him to wear a prescribed wrist brace during that plant job. September 21 and 22 were on a weekend, and the evidence indicates Mr. Hawkins began his work assisting Mr. Burns around Monday, September 23. If it is assumed the plant job lasted only one day, then the alleged accident could only have occurred on September 19 or 20, more probably the latter. There was contradictory evidence as to whether the Our Lady of the Lake job had lasted a week or as long as , .two weeks, as contended by Mr. Burns. The job was concluded by September 27, 2002, when Mr. Burns visited another job site.