JUDE G. GRAVOIS, Judge.
12Plaintiff/appellant, David Allensworth, appeals a workers’ compensation court judgment that denied his claim that his non-Hodgkin’s lymphoma was caused by exposure to benzene while working for his former employers, and his claim that his non-Hodgkin’s lymphoma rendered him disabled. For the following reasons, we affirm the judgment.

FACTS AND PROCEDURAL HISTORY

On February 18, 2014, Mr. Allensworth filed a disputed claim for workers’ compensation benefits against his former employers, defendants/appellees Gulf South Systems, LLC (“GSS”) and Grand Isle Shipyard, Inc. (“GIS”), claiming that his diagnosis of non-Hodgkin’s lymphoma was a result of his exposure to benzene while cleaning storage tanks for both employers.[1] Trial of the matter was held on October 27, 2014. After receiving post-trial memoranda' from the parties, the | .^workers’ compensation judge issued a judgment on December 30, 2014 in favor of defendants and against Mr. Allensworth, finding that he “failed to sustain the requisite burden of [proving] that his non-[H]odgkin’s lymphoma was caused by exposure to [gasoline, crude oil and diesel] while he was employed at either [GSS] or at [GIS],” and that he “failed to sustain the requisite burden of proving thát he is disabled as a result of an occupational exposure to benzene cleaning tanks containing [the afore-mentioned toxic chemicals] between 1998 and 2005 and again between 2007 and 2012.”
The evidence submitted at trial revealed that Mr, Allensworth worked for GSS from 1998 to 2005 and for GIS from 2007 to 2012. His main job duty with both employers was cleaning storage tanks. The tanks ranged in size from 500 barrels to 15,000 barrels. Mr.' Allensworth testified that the tanks he cleaned contained “gasoline, crude oil, diesel, [and] condensate.” He could not say, however, exactly how many tanks had gasoline versus crude oil versus any other material.
In order to do his job, Mr. Allensworth would enter thé tanks and clean any chemical residue by hand with a suction hose, shovels, buckets, squeegees; pressure washers, and scrapers. Whén entering the tanks, he often' encountered sludge a foot deep and fumes, but he wore personal protective equipment, including a Tyvek suit, air mask, rubber gloves, and boots. He also wore a respirator. -He testified that his Tyvek suit would usually rip, allowing the products, in the tank to get on his clothes and skin; .however,- he also testified that when he noticed that his suit was ripped, he would replace the tom suit with a new one. He testified that he also encountered fumes while outside of the tank when he was not wearing a respirator.
*194 |4Mr. Allensworth worked a twelve-hour shift while employed by defendants. While working both inside and outside of the tanks, Mr. Allensworth testified that he would get “real nauseous, get heartburn, have a headache, dizzy [sic];” however, he never made any complaints to his employers about his. work environment, nor did he ever seek medical attention for these symptoms. He also admitted at trial that he smoked a pack of cigarettes a day on average and previously drank alcohol in excess.
In October 2012, Mr. Allensworth voluntarily left his job at GIS because the company did not have enough work for him to do. On January 22, 2013, Mr. Allensworth visited the Urgent Care Center at the Southeast Louisiana Veterans Health Care System in New Orleans with complaints of abdominal pain and weight loss. A GT scan revealed a large abdominal mass. He was referred to the Veterans Administration Hospitals in Biloxi, Mississippi and Houston, Texas. A, CT-guided biopsy performed on March 14, 2013 in Houston revealed diffuse large B-cell lymphoma, a type of non-Hodgkin’s lymphoma.
In April 2013, Mr. Allensworth was admitted to Tulane Hospital in New Orleans and received his first course of chemotherapy. Over the next few months, he received five more courses of chemotherapy, receiving his last course in August 2018. Additionally, from October 14, 2018 through November 14, 2013, Mr. Allens-worth received 25 radiation treatments. Following the completion of this treatment, Dr. Stephen Kraus, Mr. Allens-worth’s treating physician, noted in‘his December 18, 2013 medical records that there was “no evidence of recurrence or progressive disease of non-Hodgkin’s lymphoma.” Mr. Allensworth testified that he continues to be in remission.
Mr. Allensworth has not worked nor applied for work since his diagnosis. As a result of his non-Hodgkin’s lymphoma, Mr. Allensworth alleges that he can |Bdo “very, very little” of the physical things he did prior to his diagnosis. He testified that he gets fatigued very easily and could not return to work because of “health reasons.” Mr. Allensworth applied for and was granted Social Security benefits.
At trial, Mr. Allensworth submitted the affidavit of Dr. Jack Saux as an expert oncologist. Dr. Saux concluded, based on scientifically documented evidence and facts revealed through Mr. Allensworth’s affidavit and in discovered documents, that it was more probable than not and with a reasonable degree of scientific certainty, that “Mr. Allensworth’s [l]arge B-Cell non-[H]odgkin’s lymphoma was caused in total or in part, by toxic exposures to benzene containing products including crude oil, gasoline and benzene [sic].”
Defendants submitted the trial deposition of their expert, Dr. William Nassetta. Dr. Nassetta found that though there is an association between benzene and lymphoma, the association does not reach a. level of .causation, and thus, even if Mr. Allens-worth was exposed to benzene, it could not be the cause of his non-Hodgkin’s lymphoma.
This timely appeal follows the workers’ compensation judgment denying Mr. Al-lensworth’s claims of causation and disability. On appeal, Mr. Allensworth assigns the following errors:
1. It was an error in the trial court’s finding that claimant has failed to sustain the requisite burden of proving that he is disabled as a result of an occupational exposure to benzene cleaning tanks containing gasoline, crude oil and diesel between 1998 and 2005 and again between 2007 and 2012.
*195 2. It was an error in the trial court’s finding that claimant has failed to sustain the requisite . burden of proofing that his non-Hodgkin’s lymphoma was caused by exposm’e to the aforementioned toxic chemicals while he was employed at either [GSS] and [GIS].
3. It was an error in the trial courts failure to award medical expenses and past indemnity benefits.
|,i4. It was an error in the trial court relying on defendant’s expert deposition that was noticed by defendant after the close of discovery and rejecting the sworn affidavit of plaintiffs expert that was entered into evidence as a stipulation by all parties.
5. It was an error in the trial court failing to award attorney’s fees and penalties.

ASSIGNMENTS OF ERROR NUMBERS TWO AND FOUR

Causation

In his second assignment of error, Mr. Allensworth maintains that his exposure to benzene while cleaning tanks for both defendants caused his non-Hodgkin’s lymphoma. He further argues in his fourth assignment of error that the trial court erred in relying on the “defendant’s expert deposition that was noticed by defendant after the dose of discovery and rejecting the sworn affidavit of the plaintiffs expert that was entered into evidence as a stipulation by all parties.”
TKe.daimant in a workers’ compensation action based oh an occupational disease must establish by a preponderance of the evidence that there is a disability, which is related to the employment-related disease. Vargas v. Daniell Battery Mfg. Co., 98-1249 (La.App. 1 Cir. 5/20/94), 686 So.2d 1194, 1197. In .examining the merits of an occupational disease claim, :.the threshold question is. whether or not the claimant has sustained an occupational disease resulting from causes and conditions characteristic of and peculiar to his particular trade, occupation, process, or employment. La. R.S. 23:1031.1; Coats v. AT & T, 95-2670 (La.10/25/96), 681 So.2d 1243, 1247. Proof of such a causal connection need not be shown to an absolute certainty. It is sufficient that the claimant establish the cause of his disability by a-reasonable probability. Once the employee has established the existence of an occupational disease, the employee must further establish that the injury is disabling. Coats, supra.
]7The fact-finder’s determinations as to whether the worker’s testimony is credible and whether the'worker has discharged his burden of proof are factual determinations that should not be disturbed on appellate review unless clearly wrong'or manifestly erroneous. Hamilton v. Compass Grp. USA/Morrison, 07-501 (La.App. 5 Cir. 11/27/07), 973 So.2d 803, 806-07. If the lower court’s findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse. Consequently, when there are two permissible views of the evidence, the fact-finder’s choice between them cannot be manifestly erroneous. Stobart v. State, Through Department of Transportation and Development, 617 So;2d 880, 888 (La.1993).
Expert testimony is required to support a finding' of ⅜⅛ occupational disease. Fite v. Louisima Title Co., 02-2607 (La.6/27/03), 852 So.2d 983. In considering expert 'testimony, a trial ’court may accept, or reject, in whole or in part, the opinion expressed by an expert. The effect and weight to be given to expert testi *196 mony is within the broad discretion of the trial judge. The trier of fact may accept or reject any expert’s view, even to the point of substituting its own common sense and judgment for that of an expert witness where, in the fact-trier’s opinion, such substitution appears warranted by the evidence as a whole. The decision reached by the trial court regarding expert testimony will riot be disturbed on appeal absent a finding that the trial court abused its broad discretion. Phillip Family L.L.C, v. Bayou Fleet P’ship, 12-565 (La.App. 5 Cir. 2/21/13), 110 So.3d 1158, 1167-68, writ denied, 13-0641 (La.4/26/13), 112 So.3d 846.
In this case, the workers’ compensation judge found that Mr. Allensworth had not proven by a preponderance of the evidence the causal relationship between his disease and his employment. The workers’ com- . pensation judge considered the [ ^testimony and affidavit of the parties’ experts, Dr. Saux and Dr. Nassetta, in reaching his conclusion and we find no reason to disturb that conclusion.
Plaintiffs oncology expert, Dr. Saux, did not testify at trial, but instead his opinion was submitted by affidavit.[2] Included with the sworn affidavit expert report were Dr. Saux’s Curriculum Vitae, methodology, 26 non-Hodgkin’s lymphoma references and five tank-cleaning references. In his affidavit, Dr. Saux- concluded that it was more probable than not and with a reasonable degree of scientific, certainty, that “Mr. Allensworth’s [ljarge B-Cell non-[H]odg-kin’s lymphoma was caused in total or in part, by toxic exposures to benzene containing products including crude oil, gasoline and benzene [sic].” Dr. Saux never personally examined Mr. Allensworth. He relied only on Mr. Allensworth’s affidavit, since his deposition had not yet been taken, on medical records and facts revealed in discovered documents, as well as on scientifically documented evidence to reach his opinion. He reviewed studies documenting the relationship between benzene exposure and non-Hodgkin’s lymphoma, benzene exposure and diffuse large B-cell non-Hodgkin’s lymphoma, and benzene exposure and tank cleaning! The studies he referenced reported an excess of non-Hodgkin’s lymphoma and large B-cell lymphoma in workers exposed to benzene. Dr. Saux ruled in and out all known causes of lymphoma. He also concluded that there was a completed pathway exposure for the benzene based on Mr. Allens-worth’s affidavit in which he claimed he only wore coveralls and a regular shirt when cleaning the tanks. Finally, he found that Mr. Allensworth’s medical records and other documents related to him document the appearance of a large B-Cell non] 9Hodgkin’s lymphoma in an individual that is temporally associated with his exposures in his work with benzene containing products.
Dr. Nassetta testified by trial deposition on behalf of both defendants.[3] He was tendered as an expert in the field of occur *197 pational and environmental medicine.[4] Dr. Nassetta gave his educational background, explained his methodology, and then testified that he did not believe that any exposure to benzene more probably than not caused Mr. Allensworth’s non-Hodgkin’s lymphoma. According to Dr. Nassetta-, even if the level of exposure to benzene was known, which arguably isn’t, it would not change his opinion that benzene exposure .cannot cause non-Hodgkin’s lymphoma. Though Dr. Nassetta recognized that there is an association between benzene and non-Hodgkin’s lymphoma, he testified that the association has not reached a level of causation for non-Hodgkin’s lymphoma. He noted that Dr.' Saux’s report did not consider the fact -that Mr. Allensworth wore protective equipment, which would have broken the “completed exposure pathway.” Dr. Nassetta also noted that Dr. Saux’s report failed to consider the association between non-Hodgkin’s lymphoma and Mr. Allensworth’s drinking, smoking, and family history of both of his parents dying from cancer. Finally, Dr. Nassetta noted that Dr. Saux failed to mention that Mr. Allensworth has Hepatitis C, which Dr. Nassetta testified is a known cause of non-Hodgkin’s lymphoma.
Plaintiff argues that it was an error for the workers’ compensation judge to rely on Dr. Nassetta’s deposition, which was conducted' after discovery deadlines, and not on Dr. Saux’s affidavit. A motion to strike was filed on behalf of plaintiff, claiming that Dr. Nassetta was untimely identified; however, Dr. Nassetta’s trial deposition was taken, and plaintiff withdrew his motion to strike at trial. Further, the workers’ compensation judge weighed the credibility of both experts and | mdearly assigned more weight to Dr. Nas-setta’s opinion, finding that Dr. Saux’s opinion did not support a finding by a preponderance of the evidence.
Upon review, we find that the record before us demonstrates a reasonable basis for the workers’ compensation judge’s factual findings, and, as such, her findings cannot be clearly wrong. Further, in considering expert testimony, the trial judge was free to accept or reject, in whole or in part, the opinions expressed by the expert testimony presented in this case. The effect and weight to be given to the expert testimony presented in this case was within the broad discretion of the trial judge. The decision' reached by the trial court regarding expert testimony will not be disturbed on appeal absent a finding that the trial court abused its broad discretion. Phillip Family L.L.C. v. Bayou Fleet P’ship, supra. The trial judge did not abuse her broad discretion is crediting the testimony of defendants’ expert witness over that of plaintiffs expert witness. Accordingly, the workers’ compensation court was not manifestly erroneous in finding that Mr. Allensworth failed to sustain the requisite burden of proving that his non-Hodgkin’s lymphoma was caused by exposure to chemicals while he was employed at either GSS or GIS.
These assignments of error are without merit.

ASSIGNMENT OF ERROR NUMBER ONE

Proof of disability

In his first assignment of error, Mr. Allensworth argues that the workers’ compensation court erred in finding that he did not prove that he is disabled as a result of exposure to benzene while employed by defendants. Our finding above that the workers’ compensation judge did not err in her ruling that plaintiffs non- *198 Hodgkin’s lymphoma was not caused by exposure to benzene renders this assignment of error moot.
Inin any event, Mr. Allensworth argues on appeal that his occupational disease caused him total and permanent disability. In support of his argument, Mr. Allens-worth relies on his own trial testimony, the Social'Security Administration’s determination that he is. disabled,-and a “physical capacities evaluation” completed by Dr. Kraus.
To establish a right to receive permanent disability benefits, a claimant must show by clear and convincing evidence that he or she is unable to engage in any type of employment. La. R.S. 23:1221(2). To meet this burden, objective medical evidence is required. Greis v. Lake Charles Memorial Hosp., 97-1258 (La.App. 3 Cir. 3/6/98), 709 So.2d 986, 988, writs denied, 98-0937, 98-0938 (La.5/15/98), 719 So.2d 467. The trial court must weigh all the evidence, medical and lay, in order to determine if the plaintiff has met his burden. This factual finding should be given great weight and should not be overturned absent manifest error. Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277, 280 (La.1993).
“Clear and convincing” in the workers’ compensation context is an intermediate standard falling somewhere between the ordinary preponderance of the evidence civil standard and the beyond a reasonable doubt criminal standard. Hatcherson v. Diebold, Inc., 00-3268 (La.5/15/01), 784 So.2d 1284, 1288.
After thoroughly examining all of the evidence in the record, we find that, the workers’ compensation judge was not manifestly erroneous in finding that Mr. Al-lensworth failed to establish by clear and convincing evidence that he is unable to engage in any type of employment, At trial, Mr. Allensworth testified that he cannot return, to work because of “health reasons.” He testified that he has no strength and lost “80 to 90 percent of what [he] was able to do . before.” 'He gets headaches, and experiences nausea and fatigue. He admitted on cross-examination that he can currently drive, occasionally walks around the neighborhood and house, |1gand has helped out friends with odd jobs “every now and then.” He also testified that he is in remission. In his most recent report, dated December 18, 2013, Dr. Kraus noted that “there is no evidence of recurrence or progressive disease of non-Hodgkin’s lymphoma.” He noted that Mr. Allensworth had gained weight, felt much better, and was asymptomatic.. A medical record from the Veterans Administration Clinic notes that a PET scan of March 7, 2014, revealed' “no obvious evidence of malignancy,” and he was told at his appointment on June 26; 2014 to return in three months.
In stipport of his argument, Mr. Allens-worth relies heavily on a determination by the Social Security Administration that he is disabled! Mr. Allensworth’s Social Security Administration disability letter states that beginning on February 1, 2013, Mr. Allensworth was disabled under its rules. He testified that Dr. Kraus assisted him in applying for this Social Security disability by completing a “physical capacity evaluation.” Dr. Kraus’s “physical capacity evaluation” was submitted into evidence. The form, completed in October 2013, noted that Mr. Allensworth was experiencing fatigue and nausea. It noted that he could not work an eight-hour work day and could sit and stand for only one hour. He could occasionally lift and carry up to 10 lbs. and could drive for a limited time.
Though this evaluation points out Mr. Allensworth’s limitations, this evaluation *199 was completed during the time that Mr. Allensworth was receiving treatment, for his non-Hodgkin’s lymphoma. There are no medical records or reports in the record to support these assertions at the time of the workers’ compensation hearing. See Bonvillain v. Preferred Indus., 04-0849 (La.App. 1 Cir. 05/27/05), 917 So.2d 1, 9. Further, Mr. Allensworth testified that no doctor who is currently treating him has told him he cannot work. Thus, the medical h¡¡evidence does not clearly and convincingly show that ’Mr. Allensworth could not return to some-type of work. Accordingly, we find that the workers’ compensation judge was not manifestly erroneous in finding, that Mr. Allensworth failed to prove his total and permanent disability.
This assignment of error is without merit.

ASSIGNMENTS OF ERROR NUMBERS THREE AND FIVE

Medical expenses, past indemnity benefits, attorney’s fees and penalties

In his third assignment of error, Mr, Allensworth argues that the workers’ com-, pensation court erred in failing to award medical expenses and past indemnity benefits. Because, as found above, Mr. Allens-worth failed to meet his burden in proving that exposure to benzene both caused his non-Hodgkin’s lymphoma and disabled him, we find that it was proper for the court to not award medical expenses and past indemnity benefits to Mr. Allens-worth.
In his fifth assignment of error, Mr. Allensworth argues that the workers’ compensation court erred in failing to award attorney’s fees and penalties. For the same reasons, we find that the workers’ compensation court did not err in failing to award attorney’s Tees and penalties to Mr. Allensworth.
These assignments of error are -without merit. - • - ■■

CONCLUSION

For the foregoing reasons, the workers’ compensation judgment in favor of defendants and against Mr. Allensworth is affirmed.

AFFIRMED

. The disputed claim for compensation was amended on April 11, 2014 to add the Insurance Company of Pennsylvania and Commerce and Industry Insurance Company. Also, on . August 14, 2014, GIS filed a cross-claim against co-defendánts, GSS and Insurance Company of Pennsylvania.

. Defendants objected to the introduction of the affidavit and requested that they be allowed to object to the affidavit in a post-trial memo, as well as-make a Daubert challenge in the post-trial mérito. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The trial court accepted Dr. Saux’s expert affidavit into evidence subject to defendants’ objections, and GIS made a Daubert challenge in its post-trial memo. When the workers' compensa- , tion judge issued her ruling in this matter, she did not strike Dr. Saux’s affidavit from evidence, but only issued a ruling finding that plaintiff did not meet his burden in proving causation or a disability.

. Although Dr. Nassetta testified by deposition at trial, he did not issue an expert report.

. Plaintiff objected to ‘Dr. Nassetta as not be•ing board certified in occupational medicine.