EDWARD "EDDY" JACKSON

VERSUS

JEFFERSON PARISH SCHOOL BOARD

NO. 21-CA-260

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 808-644, DIVISION "O"
HONORABLE DANYELLE M. TAYLOR, JUDGE PRESIDING


February 02, 2022


**ROBERT A. CHAISSON**
**JUDGE**


Panel composed of Judges Robert A. Chaisson,
Stephen J. Windhorst, and Hans J. Liljeberg


**JUDGMENT VACATED; REMANDED**
> **RAC**
> **SJW**
> **HJL**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
EDWARD "EDDY" JACKSON
    Jennifer N. Willis
    Michael D. Letourneau

COUNSEL FOR DEFENDANT/APPELLEE,
JEFFERSON PARISH SCHOOL BOARD
    Glenn D. Price, Jr.

**CHAISSON, J.**

Plaintiff, Edward Jackson, appeals the dismissal of his tort action against his former employer, the Jefferson Parish School Board, on an exception of no cause of action. For the reasons that follow, we vacate the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.

**PROCEDURAL HISTORY**

On July 27, 2020, Mr. Jackson filed a petition for damages against his former employer, the Jefferson Parish School Board, alleging that he developed various medical conditions as a result of his exposure to lead-based paint during the course of his employment as a maintenance person. According to the petition, Mr. Jackson worked at two different Jefferson Parish schools from 1997 through 2017, and as part of his duties as a maintenance employee, he was required to scrape and "dry sand" lead-based paint from window frames, railings, doors, and walls. Sometime around 2005, Mr. Jackson began to develop kidney disease and associated hypertension. In June of 2019, Mr. Jackson was seen at University Hospital for chronic kidney disease, and in August of 2019, one of his doctors advised him that his kidney disease and other medical conditions were likely related to his exposure to toxic levels of lead resulting from his maintenance activities with the School Board.

Mr. Jackson alleged in his petition that at all material times, the two schools where he was employed contained deteriorated lead-based paint in and on the premises, which led him to have elevated levels of lead in his blood. Further, Mr. Jackson alleged that his injuries were due solely to the fault of the School Board in the following particulars:

> a) the School Board had specific knowledge of the lead-based paint defects and yet took no action to eradicate the health hazard;

b) the School Board violated the standard of care owed to its employees to provide them with a decent, safe, and sanitary work environment; and

c) the School Board is also responsible for other acts which may be discovered during the investigation and trial of this matter.

The petition also alleged that despite having actual knowledge of the lead-based paint and the health hazards that it posed, the School Board, through its agents, deliberately and repeatedly exposed Mr. Jackson to these hazards. Mr. Jackson claimed that as a result of these acts, he suffered physical injuries, including, but not limited to, kidney disease and hypertension, and thus, he is entitled to damages for pain and suffering, loss of past and future earnings, permanent disability, medical costs, and loss of quality of life.

In response to Mr. Jackson's petition, the School Board filed a peremptory exception of no cause of action arguing it was entitled to immunity from a tort suit pursuant to the exclusivity provisions of the Louisiana Workers' Compensation Act ("LWCA"). In particular, the School Board asserted that Mr. Jackson, who alleged that he contracted chronic lead poisoning as a result of his employment with the School Board, is barred from asserting a cause of action in tort because lead poisoning is included as a compensable occupational disease under the LWCA, and therefore, Mr. Jackson is limited to the exclusive remedies set forth therein.

In his opposition to the exception of no cause of action, Mr. Jackson stated that his tort action against the School Board should be maintained because chronic lead poisoning does not qualify as an occupational disease under the LWCA. In its reply to Mr. Jackson's opposition, the School Board asserted that chronic lead poisoning is an occupational disease and is thus covered by the LWCA. Further, the School Board asserted that regardless of the classification of Mr. Jackson's medical condition, the exclusive remedy provision of the LWCA applies because

Mr. Jackson's claim arises out of the course and scope of his employment with the School Board.

On January 28, 2021, the trial court conducted a hearing on the School Board's exception of no cause of action. After considering the arguments of counsel, the trial court sustained the exception of no cause of action, stating as follows:

> I reviewed the memorandum and I also reviewed the jurisprudence that was cited by both parties in this case and it seems to me that the injuries that are alleged did happen during the course and scope of his employment. It has previously been characterized as an occupational disease and although I understand that he's not called a painter but part of his duties would have been to perform painting as a maintenance man I don't know how we get around the fact that that still would be considered in my opinion an occupational disease and so I'm going to grant the exception or sustain I should say the exception.

On February 10, 2021, the trial court signed a written judgment, which sustained the School Board's exception of no cause of action and dismissed Mr. Jackson's case, with prejudice, at his cost. Mr. Jackson now appeals, setting forth two assignments of error. In his first assigned error, Mr. Jackson contends that the trial court erred in sustaining the exception of no cause of action because, in the context of Mr. Jackson's employment, lead poisoning is not an occupational disease under the LWCA. Second, Mr. Jackson maintains that the trial court erred when it ignored the allegations of intentional acts contained in his petition.

## LAW AND ANALYSIS

The purpose of the peremptory exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition. *Gaudet v. Jefferson Parish*, 12-707 (La. App. 5 Cir. 3/27/13), 116 So.3d 691, 693. The exception of no cause of action is triable on the face of the petition. No evidence may be introduced to support or controvert an exception of no cause of action. La. C.C.P. art. 931. Consequently,

the court reviews the petition and accepts the well-pleaded allegations of fact as true. *New Orleans Craft Temple, Inc. v. Grand Lodge of Free and Accepted Masons of the State of Louisiana*, 13-525 (La. App. 5 Cir. 12/19/13), 131 So.3d 957, 962.

The mover has the burden of demonstrating the petition states no cause of action. The pertinent question is whether, in the light most favorable to the plaintiff and with every doubt resolved in the plaintiff's behalf, the petition states a valid cause of action for relief. *Pinegrove Elec. Supply Co., Inc. v. Cat Key Const., Inc.*, 11-660 (La. App. 5 Cir. 2/28/12), 88 So.3d 1097, 1100. Whether the plaintiff can prove the allegations set forth in the petition is not determinative of the exception of no cause of action. *New Orleans Craft Temple, Inc.*, 131 So.3d at 962.

In reviewing the judgment of the trial court relating to an exception of no cause of action, appellate courts should conduct a *de novo* review because the exception raises a question of law and the lower court's decision is necessarily based solely on the sufficiency of the petition. *Kitziger v. Mire*, 19-87 (La. App. 5 Cir. 9/24/19), 280 So.3d 302, 306, *writ denied*, 19-1858 (La. 1/28/20), 291 So.3d 1055.

La. R. S. 23:1031.1(A) provides:

> Every employee who is disabled because of the contraction of an occupational disease as herein defined, or the dependent of an employee whose death is caused by an occupational disease, as herein defined, shall be entitled to the compensation provided in this Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment.

If an employee contracts an occupational disease within the meaning of the LWCA, then that employee is generally limited to the recovery of workers' compensation benefits as his exclusive remedy against his employer and may not sue his employer in tort. La. R.S. 23:1032(A)(1)(a) specifically provides as follows:

Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages, including but not limited to punitive or exemplary damages, unless such rights, remedies, and damages are created by a statute, whether now existing or created in the future, expressly establishing same as available to such employee, his personal representatives, dependents, or relations, as against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease.

Relying on this provision, the School Board filed its exception of no cause of action. Specifically, the School Board alleged in the exception:

As a former employee of the JPSB, the Plaintiff filed this suit to recover for having allegedly contracted the occupational disease of lead poisoning. The Plaintiff, however, is barred from asserting a cause of action in tort against the JPSB because lead poisoning is included as a compensable disease under Louisiana's Workers' Compensation Act (the "Act"). Therefore, the Plaintiff is limited to the exclusive remedies provided by the Act.

In *Brown v. Adair*, 02-2028 (La. 4/9/03), 846 So.2d 687, 690, the Louisiana Supreme Court stated that the tort immunity provided by the LWCA "operates as an affirmative defense; it is not a law evaluating conditions of legality of defendant's conduct but, rather, serves as a vehicle for asserting a substantive defense that defeats an otherwise viable claim." *See also Teasley v. Ates*, 03-824 (La. App. 3 Cir. 12/10/03), 861 So.2d 778, 780, *writ denied*, 04-92 (La. 3/19/04), 869 So.2d 855. Further, Louisiana jurisprudence has held that an affirmative defense may not form the basis of a peremptory exception when the asserted defense goes to the merits of the case. *See White v. New Orleans Center for Creative Arts*, 19-213 (La. App. 4 Cir. 9/25/19), 281 So.3d 813, 822, *writ denied*, 19-1725 (La. 12/20/19), 286 So.3d 428; *Mouton v. Hebert's Superette, Inc.*, 10-787 (La. App. 3 Cir. 12/8/10), 53 So.3d 561, 564.

In the present case, the School Board bases its claim of tort immunity on its assertion that Mr. Jackson contracted an occupational disease during the course

and scope of his employment. La. R.S. 23:1031.1(B) defines an occupational disease for purposes of recovery under the LWCA as follows:

> An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Occupational disease shall include injuries due to work-related carpal tunnel syndrome. Degenerative disc disease, spinal stenosis, arthritis of any type, mental illness, and heart-related or perivascular disease are specifically excluded from the classification of an occupational disease for the purpose of this Section.

The School Board maintains in its exception that lead poisoning is included as a compensable disease under the LWCA; however, none of the conditions alleged by Mr. Jackson, *i.e.*, kidney disease, hypertension, or any other medical condition associated with lead-based poisoning, is a specifically enumerated disease that is either included or excluded as an occupational disease pursuant to La. R.S. 23:1031.1(B). Therefore, the determination of whether these particular conditions constitute an "occupational disease" must be made on a case-by-case basis depending upon whether the disease or illness "is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease." This clearly is a fact-intensive determination.

Generally, in order to determine whether an occupational disease exists, courts must look to an employee's work-related duties and the nature of his employment to determine whether a disease is due to causes and conditions "characteristic of and peculiar to" the employee's particular occupation. *Arrant v. Graphic Packaging International, Inc.,* 13-2878 (La. 5/5/15), 169 So.3d 296, 309. Moreover, expert evidence is usually necessary to determine whether an occupational disease exists. *Allensworth v. Grand Isle Shipyard, Inc.*, 15-257 (La. App. 5 Cir. 10/28/15), 178 So.3d 191, 195; *LeCompte v. St. Tammany Parish*

*School Board*, 20-333 (La. App. 1 Cir. 4/26/21), 324 So.3d 1066, 1069, *writ denied*, 21-744 (La. 10/5/21), 325 So.3d 358.

Under the circumstances of the present case, where the conditions complained of by Mr. Jackson are not one of the specifically enumerated diseases either included or excluded under the statute as an occupational disease, we find that the School Board's defense of tort immunity, which is dependent on a fact-intensive determination of whether Mr. Jackson has an occupational disease within the meaning of the LWCA, goes to the merits of the case. Therefore, the School Board's claim of tort immunity is not appropriate for determination on an exception of no cause of action, which is resolved on the allegations of the petition without the introduction of evidence. Rather, as an affirmative defense, the issue should be referred to the merits, and a motion for summary judgment, in which the parties may introduce evidence for the trial court's consideration, is, therefore, the proper procedure for addressing it prior to trial. *White v. New Orleans Center for Creative Arts*, 281 So.3d at 822; *Mouton v. Hebert's Superette, Inc.*, 53 So.3d at 564.

Having determined that, under the facts as alleged in this case, the School Board's defense of tort immunity is not properly raised by an exception of no cause of action, we pretermit any discussion of intentional tort, which was not raised in the School Board's exception of no cause of action, but rather in Mr. Jackson's opposition to the exception.

**CONCLUSION**

Accordingly, for the reasons set forth herein, we vacate the judgment of the trial court sustaining the School Board's exception of no cause of action and remand the matter for further proceedings consistent with this opinion.

**JUDGMENT VACATED;
REMANDED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**FEBRUARY 2, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 21-CA-260

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DANYELLE M. TAYLOR (DISTRICT JUDGE)
JENNIFER N. WILLIS (APPELLANT)          GLENN D. PRICE, JR. (APPELLEE)

**MAILED**
MICHAEL G. FANNING (APPELLEE)          MICHAEL D. LETOURNEAU (APPELLANT)
ATTORNEY AT LAW                        ATTORNEY AT LAW
238 HUEY P. LONG AVENUE                650 POYDRAS STREET
POST OFFICE BOX 484                    SUITE 1500
GRETNA, LA 70054                       NEW ORLEANS, LA 70130